## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| NATHAN JOHNSON, RACHEL DeBAUN, NATHAN MOORE, SHAWN DERRICK, and ALAN RABINOWITZ, on behalf of themselves as well as a Class of all similarly situated persons,<br><br>        Plaintiffs,<br><br>    v.<br><br>LOANDEPOT.COM, LLC,<br><br>        Defendant. | Civil Action No. 1:25-CV-02294-JRR |

## DEFENDANT LOANDEPOT.COM, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT <u>AND MOTION TO STRIKE CERTAIN ALLEGATIONS</u>

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 4

    I.     The Parties ....................................................................................................... 4

    II.    Plaintiffs' Truth In Lending Act Claim ......................................................... 6

LEGAL STANDARDS .................................................................................................. 8

ARGUMENT .................................................................................................................. 9

    I.     Plaintiffs Lack Article III Standing To Assert Their Claims ................................ 9

          A.    Plaintiffs Have Not Pled a Cognizable Injury Traceable to
                  loanDepot ........................................................................................... 10

          B.    Plaintiff Rabinowitz Has No Standing ............................................... 12

    II.    Plaintiffs' Claims Are Barred by the Statute of Limitations ................................ 13

    III.   Plaintiffs Fail to State a Claim ............................................................................ 15

          A.    Plaintiffs Fail To Satisfy Rule 9(b)'s Heightened Pleading
                  Standard ............................................................................................. 16

               1.    Plaintiffs' Claim Sounds in Fraud and Thus Is Subject to
                        Rule 9(b) ................................................................................. 16

               2.    Plaintiffs Fail to Provide Sufficient Details About the
                        Alleged Fraud .......................................................................... 17

          B.    Plaintiffs Do Not Adequately Allege a Violation of the LO Comp
                Rule .................................................................................................... 21

    IV.   The Complaint Should Be Dismissed with Prejudice ......................................... 23

    V.    The Court Should Strike Immaterial Allegations from the Complaint ................. 24

CONCLUSION ............................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Hogan*,
  26 F.4th 587 (4th Cir. 2022) ...................................................................................11

*Alston v. Fed. Home Loan Mortg. Corp.*,
  No. 20-cv-3272, 2022 WL 824849 (D. Md. Mar. 17, 2022) ...............................12

*Anderson Bros. Ford v. Valencia*,
  452 U.S. 205 (1981)..............................................................................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................8

*Ayres v. Ocwen Loan Servicing, LLC*,
  129 F. Supp. 3d 249 (D. Md. 2015) ..........................................................19, 20, 21

*Beck v. McDonald*,
  848 F.3d 262 (4th Cir. 2017) .......................................................................8, 10, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................8

*Bernard v. Gulf Oil Corp.*,
  841 F.2d 547 (5th Cir. 1988) ................................................................................11

*Bezek v. First Nat'l Bank of Pa.*,
  No. 17-cv-2902, 2023 WL 348967 (D. Md. Jan. 20, 2023)..................................13

*Bowers v. Legum & Norman Realty Inc.*,
  776 F. Supp. 3d 294 (D. Md. 2025)..................................................................19, 21

*Bowman v. Select Portfolio Servicing, Inc.*,
  704 F. Supp. 3d 633 (D. Md. 2023) ..............................................................8, 9, 16

*Corder v. Antero Res. Corp.*,
  57 F.4th 384 (4th Cir. 2023) .................................................................................18

*Davis v. Edgemere Fin. Co.*,
  523 F. Supp. 1121 (D. Md. 1981)..........................................................................13

*Doe v. Obama*,
  631 F.3d 157 (4th Cir. 2011) ................................................................................10

*Dreher v. Experian Info. Sols., Inc.*,
  856 F.3d 337 (4th Cir. 2017) ..................................................................................9

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Edmonson v. Eagle Nat'l Bank*,
  922 F.3d 535 (4th Cir. 2019) ........................................................................ *passim*

*Evans v. Rudy-Luther Toyota, Inc.*,
  39 F. Supp. 2d 1177 (D. Minn. 1999)................................................................17

*Fid. Mortg. Corp. v. Seattle Times Co.*,
  213 F.R.D. 573 (W.D. Wash. 2003) ............................................................ 16-17

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024)...................................................................9, 10, 11, 12

*Gilman & Bedigian, LLC v. Sackett*,
  337 F.R.D. 113 (D. Md. 2020)...............................................................9, 24, 25

*Giuliani v. Polysciences, Inc.*,
  275 F. Supp. 3d 564 (E.D. Pa. 2017) ................................................................25

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) ................................................................16, 18, 20, 21

*Heise v. Porcelli*,
  No. 07-cv-1866, 2008 WL 2439884 (M.D. Fla. June 13, 2008) ............................................17

*Hershey v. MNC Fin., Inc.*,
  774 F. Supp. 367 (D. Md. 1991)...............................................................16, 17

*Johnson v. Wheeler*,
  492 F. Supp. 2d 492 (D. Md. 2007)................................................................ 17-18

*Kerby v. Mortg. Funding Corp.*,
  992 F. Supp. 787 (D. Md. 1998)................................................................16

*Kerns v. United States*,
  585 F.3d 187 (4th Cir. 2009) ................................................................8

*Minter v. Wells Fargo Bank, N.A.*,
  675 F. Supp. 2d 591 (D. Md. 2009) ................................................................14

*MSP Recovery Claims, Series LLC v. Lundbeck LLC*,
  130 F.4th 91 (4th Cir. 2025) ................................................................23

*United States ex rel. Nicholson v. MedCom Carolinas, Inc.*,
  42 F.4th 185 (4th Cir. 2022) ........................................................................ *passim*

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Oram v. SoulCycle LLC*,
   979 F. Supp. 2d 498 (S.D.N.Y. 2013)........................................................................25

*Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*,
   909 F.3d 655 (4th Cir. 2018) .........................................................................13, 15

*Proctor v. Metro. Money Store Corp.*,
   645 F. Supp. 2d 464 (D. Md. 2009) ................................................................17

*Ryan S. v. UnitedHealth Grp., Inc.*,
   98 F.4th 965 (9th Cir. 2024) .........................................................................22

*Scharpf v. Gen. Dynamics Corp.*,
   137 F.4th 188 (4th Cir. 2025) ........................................................................ 14-15

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ........................................................................................10

*Stovall v. Suntrust Mortg., Inc.*,
   No. 10-cv-2836, 2012 WL 5879132 (D. Md. Nov. 20, 2012) ................................11

*Suggs v. M & T Bank*,
   230 F. Supp. 3d 458 (E.D. Va. 2017) .................................................................14

*Suprock v. Quantum Energy, Inc.*,
   676 F. Supp. 3d 891 (D. Nev. 2023) ................................................................24-25

*United States ex rel. Taylor v. Boyko*,
   39 F.4th 177 (4th Cir. 2022) .......................................................... 8, 11-12, 22, 23

*Trump v. Hawaii*,
   585 U.S. 667 (2018)........................................................................................10

*Tucker v. Am. Int'l Grp., Inc.*,
   936 F. Supp. 2d 1 (D. Conn. 2013)....................................................................25

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)........................................................................................ 12-13

*Weinberger v. Retail Credit Co.*,
   498 F.2d 552 (4th Cir. 1974) ...........................................................................14

**Statutes and Regulations**

12 U.S.C. § 2607(a) ...........................................................................................20

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

15 U.S.C.

§ 1602(dd)(5) ................................................................................................13
§ 1639b.................................................................................................1, 6, 15, 21
§ 1640(e) ................................................................................................13

18 U.S.C.

§ 371 ................................................................................................9, 24
§ 1001 ................................................................................................9, 24
§ 1343 ................................................................................................9, 24
§ 1348 ................................................................................................9, 24

42 U.S.C. § 1320a-7b(b)(1)(B) ................................................................19

12 C.F.R. § 1026.36(d) ................................................................1, 6, 15, 22

15 C.F.R. § 1026.36(a)(1)(i) ................................................................22, 23

**Other Authorities**

Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1298 (4th ed.) ....................18

Federal Rule of Civil Procedure

8................................................................................................3, 8
9(b)................................................................................................*passim*
12(b)................................................................................................8, 15
12(f)................................................................................................9, 24

Office of Info. & Regul. Affs., *Conclusion of EO 12866 Regulatory Review*,
https://perma.cc/MJ3K-T8ZF (last visited Sep. 12, 2025) ....................6

Consumer Financial Protection Bureau, *Withdrawal of Bureau guidance,
interpretive rules, policy statements, and advisory opinions*, 90 Fed. Reg.
20084 (May 12, 2025)................................................................6

## INTRODUCTION

Plaintiffs in this putative class action assert a single time-barred claim under the Truth in Lending Act ("TILA") based on threadbare allegations that unnamed loan officers at loanDepot.com, LLC ("loanDepot" or the "Company") perpetrated a yearslong "fraud" to offer more favorable interest rates to unnamed individuals who are neither plaintiffs in this case nor members of the purported class. That theory is as implausible as it is flawed, and this Court should reject it.

The five named Plaintiffs in this case obtained loans from loanDepot between 2019 and 2021, either to purchase homes (in two cases) or to lower the interest rates on their existing homes through refinancing (in three cases). These Plaintiffs—far from victims of a predatory lending scheme—received loans with historically low interest rates ranging between 2.5% and 3.25%. Nevertheless, they assert that loanDepot violated TILA's Loan Originator Compensation Rule (the "LO Comp Rule"), which provides that no loan originator shall receive, directly or indirectly, compensation in an amount that is based on a *term of a transaction*, or *proxy* for a term of the transaction. *See* 12 C.F.R. § 1026.36(d); 15 U.S.C. § 1639b.

Plaintiffs do not actually claim that loan originators were paid differently on a loan based on a term of the transaction (or a proxy for one) in issuing *their* loans. Instead, they accuse loanDepot of devising a fraudulent scheme in which its loan officers transferred loans to internal loan consultants ("ILCs"), who loanDepot designated as the loan originators for the transferred loans. Although Plaintiffs acknowledge that ILCs were paid employees, they assert that ILCs had no real responsibilities and that loan officers continued to work on the loans they transferred. Even assuming these assertions are true—and they are not—this alleged "scheme" was not used for *Plaintiffs'* loans; it was purportedly used for loans issued to *other consumers* who ultimately received *lower* rates based on the alleged TILA violation. Put differently, Plaintiffs' sole claim in

this case rests on the stunning proposition that loanDepot should be held liable under TILA, and the LO Comp Rule specifically, because unidentified loan officers gave unspecified lower interest rates to unidentified borrowers who are neither parties in this case nor members of the proposed class.

Neither logic nor law supports that extraordinary theory. Even accepting Plaintiffs' fanciful allegations as true at this stage of the litigation, "the defendant should have broken the law for me too" is not a legally cognizable basis for recovery under TILA, much less so for an entire class of borrowers for the last six years. That defect alone dooms Plaintiffs' case. But there are a host of additional, related reasons to dismiss the Complaint.

*First*, the mismatch between loanDepot's alleged TILA violation and Plaintiffs' asserted injury defeats Article III standing. Plaintiffs claim that loanDepot violated the LO Comp Rule by using so-called "sham" transfers to originate loans at lower rates for certain consumers. But those loans belonged to other consumers, not to Plaintiffs. Aside from abstract and speculative statements about "higher rates" they had to pay, Plaintiffs fall short of establishing a concrete, particularized injury. And even if they could make out a cognizable injury, Plaintiffs come nowhere close to drawing the requisite causal nexus between any such injury and loanDepot's alleged misconduct—which (again) relates entirely to borrowers who are not even parties in this case. If in fact loanDepot violated the LO Comp Rule, under Plaintiffs' theory, it did so as to other consumers who, as a result, paid less for their loans. Plaintiffs therefore have failed to demonstrate that they suffered a concrete injury that is fairly traceable to loanDepot's alleged violation of TILA.

*Second*, even if Plaintiffs could establish standing, their claims come far too late. TILA claims are governed by a three-year statute of limitations. That means the applicable limitations period expired, at the very latest, on June 16, 2024. *See* Compl. ¶¶ 49-53, ECF No. 1. Plaintiffs

waited until more than a year later, on July 15, 2025, to file this action. Plaintiffs have not justified that tardiness in their Complaint, nor have they offered a convincing basis to toll or otherwise extend the relevant filing deadline. Accordingly, their thirteenth-hour TILA claim must be dismissed.

*Third*, the allegations in the Complaint are patently insufficient to state a claim for relief. The Complaint—which alleges a complex, yearslong scheme by loanDepot—sounds in fraud. Yet it offers only threadbare allegations that do not remotely provide the requisite detail needed to satisfy even Rule 8's plausibility pleading standards, let alone the *heightened* pleading standards required by Rule 9(b). Repeatedly throughout the Complaint, Plaintiffs gesture vaguely at a fraudulent transfer system orchestrated by loanDepot's loan officers and managers. But Plaintiffs provide scant detail on the particulars of this alleged scheme. Indeed, the Complaint does not identify a single instance in which a loan officer or manager made a fraudulent statement. Nor does the Complaint provide any explanation for how Plaintiffs supposedly know about the alleged fraud they claim was concealed. Plaintiffs simply repeat the same mantra, over and over again— that loanDepot must be held liable for systematically flouting the LO Comp Rule by transferring the loans of some consumers to less costly ILCs but not others.

*Fourth*, even if Plaintiffs could muster enough facts to satisfy Rule 9's rigorous pleading standards, Plaintiffs still do not state a plausible violation of the LO Comp Rule or TILA. Rather than identify a "term of a transaction" that allegedly affected an originating loan officer's compensation, Plaintiffs summarily assert that loan officers were forced to transfer some unidentified subset of loans when they failed to secure unspecified "higher rates," which in turn meant those loan officers were paid less. Apart from that conclusory assertion, Plaintiffs do not allege any information about how loanDepot's ILCs—the relevant loan originators for transferred

loans—were compensated or explain how such compensation was improperly tied to a specific interest rate for loans in violation of TILA. Instead, they implausibly claim that loanDepot pays these ILCs to have "little to no involvement" on such transferred loans, which inexplicably improves profitability, and lists them as the loan originators on unspecified "federal lending forms." But even assuming that loanDepot paid ILCs to have "little" involvement, they were still the relevant loan originators.

*Finally*, Plaintiffs try to shore up their allegations of fraud by baldly asserting (without any supporting facts or evidence) that loanDepot "potentially" committed a series of crimes—including wire fraud, securities fraud, false statements, and conspiracy. And if those inflammatory allegations were not enough, the Complaint alleges that loanDepot violated "15 USC § 1939(b)(c)(1)"—a statutory provision that does not appear to exist. Compl. ¶¶ 48(b), (e). Needless to say, this Court should not permit Plaintiffs or their counsel to toss around reckless accusations of "potential" crimes or statutory violations in their Complaint.

For these reasons, and those explained more fully below, the Court should dismiss the Complaint with prejudice. When plaintiffs seek to harm a company's reputation by asserting sweeping claims of fraud without facts or evidence—and without any explanation for how they know about the supposed fraud—they should not get a second chance. Courts across the Fourth Circuit have not hesitated to dismiss such claims with prejudice, and neither should this Court.

## **BACKGROUND**

### I.     THE PARTIES

loanDepot is one of the nation's largest residential mortgage lenders. *See* Compl. ¶ 13; Declaration of Randi Enison ("Enison Decl.") ¶ 3. One of its primary channels for selling mortgage products is its retail division, in which dedicated loan officers at regional offices connect and work with local customers. *See* Compl. ¶¶ 17, 55; Enison Decl. ¶ 3. Loan officers start by presenting

customers with available loan options, which vary depending on several factors, including the amount they are financing, the reason they are financing it, their credit profile, how much money they are willing to put down, the type of property they are interested in, the intended use of that property, and current market interest rates (which constantly fluctuate). Customers select the option best suited to them, receive and sign comprehensive loan disclosures, and eventually close the loan. As compensation, the loan officer will receive a fixed percentage of the loan amount.

In some cases, a loan officer will transfer a customer to a loan officer at another location or to an ILC. Compl. ¶ 3. There are five typical reasons for transferring a customer, one of which is that the customer requested to be transferred. *See* Compl. ¶¶ 24, 35. To effectuate a transfer, the officer will fill out an internal transfer form and indicate which (if any) of these reasons applies. Compl. ¶¶ 4, 24.

Plaintiffs are five individuals who obtained mortgage loans from loanDepot in 2019, 2020, and 2021. Compl. ¶¶ 8-12, 49-53. Beyond their names and the locations of their properties, the Complaint scarcely provides any details about Plaintiffs and their relationships or interactions with loanDepot. For instance, Plaintiffs do not provide any information about the loan officers they worked with, the interest rates they received on their loans, and what rates they could have received absent loanDepot's alleged misconduct. *See generally* Compl. Nor do they assert that they requested, let alone were eligible for, lower rates. Although Plaintiffs clarify that their loans (and the loans of proposed class members) were not "transferred to ILC's [sic]," Compl. ¶ 54, they do not identify any consumers whose loans *were* transferred in purported violation of the LO Comp Rule. The dearth of information in the Complaint comes as no surprise. Had Plaintiffs provided this Court with a full picture of their loans, they would have had to disclose that each of them received historically low interest rates and that one of the named Plaintiffs (Alan Rabinowitz) did

not even obtain his loan through loanDepot's "retail division," and thus would not fall within Plaintiffs' proposed class definition. *See infra* at pp. 12-13; Compl. ¶ 55.

## II.    PLAINTIFFS' TRUTH IN LENDING ACT CLAIM

Under TILA, mortgage lenders like loanDepot are prohibited from incentivizing their employees to steer customers to purchase loans with higher rates. *See* 15 U.S.C. § 1639b(c)(1); Compl. ¶¶ 67-74. To implement this prohibition, on December 22, 2011, the Consumer Financial Protection Bureau ("CFPB") promulgated the LO Comp Rule, which provides that "no loan originator shall receive and no person shall pay to a loan originator, directly or indirectly, compensation in an amount that is based on a term of a transaction." 12 C.F.R. § 1026.36(d)(1)(i). On June 4, 2025, however, the CFPB submitted a proposed regulatory action indicating that it intends to revise, if not rescind, the LO Comp Rule. *See* Office of Info. & Regul. Affs., *Conclusion of EO 12866 Regulatory Review*, https://perma.cc/MJ3K-T8ZF (last visited Sep. 12, 2025) (indicating that the CFPB had submitted a proposed action entitled "Loan Originator Compensation Requirements Under [TILA]; ***Rescission***" (emphasis added)).[1]

Plaintiffs here allege that loanDepot violated TILA's LO Comp Rule by punishing loan officers "with reduced commission rates if they were unable to sell loans with higher rates." Compl. ¶ 2. In service of that sweeping assertion, the Complaint describes a "years-long scheme" involving fraudulent conduct committed by loan officers, managers, and other loanDepot employees. Compl. ¶¶ 1, 3, 31, 40. According to Plaintiffs, loan officers transferred loans to ILCs when they were unable to secure loans with "inflated rates," Compl. ¶ 29, and would "falsify

---

[1] The CFPB also recently withdrew several guidance documents, including a bulletin addressing "the payment of compensation to loan originators." CFPB, *Withdrawal of Bureau guidance, interpretive rules, policy statements, and advisory opinions*, 90 Fed. Reg. 20084, 20087 (May 12, 2025).

internal forms" indicating fake reasons for the transfers, Compl. ¶ 34. Meanwhile, loanDepot managers allegedly ensured compliance with this practice by encouraging loan officers to transfer low-rate loans to ILCs and to lie about the reason for doing so. Compl. ¶ 40. And to complete the cover-up, Plaintiffs insist, loanDepot prepared "federal lending forms" that included false information about the role of ILCs in securing loans. Compl. ¶ 41 & n.3.

Aside from conclusory statements accusing loanDepot of pervasive fraud, Plaintiffs include nothing to support their TILA claim. For instance, they do not name a single individual who allegedly participated in the "fraudulent scheme" or identify a single instance in which a loanDepot employee made a fraudulent representation (on a form or otherwise). They also fail to disclose the (historically low) rates they ultimately received on their loans or explain how much lower their rates could be, or should have been, absent loanDepot's alleged misconduct. Where the Complaint does address loan officer compensation, it makes only vague references to "higher rates," failing to specify what "higher rates" loan officers had to target to receive compensation. Compl. ¶¶ 2, 25, 31, 45.

Plaintiffs do not even try to fill any of these factual gaps. Nor do Plaintiffs explain how they mysteriously uncovered loanDepot's alleged scheme (which they say was hidden).[2] Instead, they urge the Court to pile conjecture on top of speculation and presume, without more, that loanDepot has engaged in fraud based on their "information and belief." But even if this Court were to credit these implausible allegations, they would merely serve to confirm that Plaintiffs did

---

[2] The bulk of the allegations in the Complaint, which do not directly involve Plaintiffs (consumers whose loans were never transferred), curiously mirror allegations previously raised and later dismissed by Movement Mortgage, LLC, a competitor of loanDepot, which was represented by the same lawyer currently representing Plaintiffs. *See* Answer, Affirmative Defenses, and Counterclaim of Defendant at 14, *loanDepot.com, LLC v. Movement Mortg., LLC*, No. 23-0681 (D. Del. Jul. 31, 2023), ECF No. 5 ("Beginning in or around 2020, LoanDepot began a practice of forcing loan officers to take reduced commissions by requiring them to redesignate certain self-generated loans as company referred, which earn lower commissions, as well as requiring loan officers to transfer their loans to loan consultants," which "violated Regulation Z.").

not suffer any injury caused by loanDepot's alleged conduct because, as Plaintiffs concede, their loans were never transferred to ILCs in violation of TILA or the LO Comp Rule. *See* Compl. ¶ 54.

## LEGAL STANDARDS

Rule 12(b)(1): Under Rule 12(b)(1), the Court may dismiss a putative class action for lack of subject matter jurisdiction if the named plaintiffs lack Article III standing to bring suit. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). In determining whether Plaintiffs have standing, the Court may "go beyond the allegations of the complaint" if necessary "to determine if there are facts to support the jurisdictional allegations." *Id.* (holding that if defendant argues that "jurisdictional allegations of the complaint [are] not true" then "the presumption of truthfulness normally accorded a complaint's allegations does not apply" (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009))).

Rule 12(b)(6): "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory assertions" are inadequate to create a plausible claim, and a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 193 (4th Cir. 2022) (citation omitted). As this Court has rightly observed, "[t]he liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2) has been decidedly tightened (if not discarded) in favor of a stricter standard requiring the pleading of facts painting a plausible picture of liability." *Bowman v. Select Portfolio Servicing, Inc.*, 704 F. Supp. 3d 633, 640 (D. Md. 2023) (Rubin, J.) (citation omitted).

Rule 9(b): Where, as here, a complaint's allegations sound in fraud, "a higher standard applies: Fraud-based claims must be pleaded with particularity." *United States ex rel. Nicholson*

*v. MedCom Carolinas, Inc.*, 42 F.4th 185, 194 (4th Cir. 2022); *see* Fed. R. Civ. P. 9(b). This standard applies to all "[c]laims that sound in fraud, whether rooted in common law or arising under a statute." *Bowman*, 704 F. Supp. 3d at 640-41 (citation omitted).[3] To satisfy this standard, Plaintiffs must identify "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019) (citation omitted). This "requirement is often called the fraud's 'who, what, when, where, and how.'" *Nicholson*, 42 F.4th at 195 (citation omitted).

Rule 12(f): Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Challenged allegations may be struck when they "have no possible or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to a party." *Gilman & Bedigian, LLC v. Sackett*, 337 F.R.D. 113, 117 (D. Md. 2020).

## ARGUMENT

## I.    PLAINTIFFS LACK ARTICLE III STANDING TO ASSERT THEIR CLAIMS

As "a threshold jurisdictional question," this Court must ensure that Plaintiffs have standing to sue in federal court. *See Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017). To establish standing, Plaintiffs bear the burden of showing "(i) that [they] suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). Any alleged "injury in fact

---

[3] There can be little doubt that Plaintiffs' TILA claim sounds in fraud. The Complaint is rife with allegations of loanDepot's fraudulent conduct and goes so far as to accuse loanDepot of "potentially" violating "various criminal statutes, including Wire Fraud (18 U.S.C. § 1343), Securities Fraud (18 U.S.C. § 1348), False Statements (18 U.S.C. § 1001), and Conspiracy (18 U.S.C. § 371), among others." Compl. ¶ 6; *see infra* at pp. 24-26.

must be 'concrete,' meaning that it must be real and not abstract," and "must be particularized," meaning that it "must affect 'the plaintiff in a personal and individual way.'" *Id.* at 381 (citations omitted). "Moreover, the injury must be actual or imminent, not speculative." *Id.* Likewise, "the 'line of causation between the'" alleged "'conduct and injury'—the 'links in the chain of causation'—must not be too speculative or attenuated." *Id.* at 383 (citations omitted). These principles apply with equal force to putative class actions, where courts analyze standing based on the allegations of the named plaintiffs. *See Beck*, 848 F.3d at 269. "Without a sufficient allegation of harm to the named plaintiff in particular, plaintiffs cannot meet their burden of establishing standing." *Id.* at 270 (quoting *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011)). Plaintiffs have failed to establish Article III standing, and the Court should dismiss this action for lack of subject matter jurisdiction.

### A.    Plaintiffs Have Not Pled a Cognizable Injury Traceable to loanDepot

The gravamen of Plaintiffs' TILA claim is that loanDepot allegedly transferred loans from loan officers to ILCs when "the loan officer could not sell a loan with the initial rates/terms and needed a reduction." Compl. ¶ 37; *see* Compl. ¶¶ 1-2, 5, 23-24, 32-39. Even accepting these allegations as true, Plaintiffs cannot demonstrate that they suffered a concrete and particularized injury caused by loanDepot's alleged misconduct.

For starters, Plaintiffs concede that their loans were *not even transferred* to ILCs, Compl. ¶ 54, so they were not subject to the alleged misconduct giving rise to their TILA claim. To demonstrate standing, Plaintiffs must allege, and eventually prove, that they "'personal[ly]' suffered a concrete and particularized injury *in connection with the conduct about which [they] complain*[]." *Trump v. Hawaii*, 585 U.S. 667, 697-98 (2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)) (first alteration in original) (emphasis added). Plaintiffs flunk that test. Their Complaint focuses entirely on loanDepot's actions directed at other borrowers who are neither

named parties nor members of the proposed class. But it is well settled "that a plaintiff lacks standing to litigate . . . conduct to which he was not subjected." *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 550 (5th Cir. 1988) (citation omitted); *see Ali v. Hogan*, 26 F.4th 587, 596 (4th Cir. 2022) ("[S]tanding is not to be placed in the hands of concerned bystanders." (citation omitted)); *Stovall v. Suntrust Mortg., Inc.*, No. 10-cv-2836, 2012 WL 5879132, at *5 (D. Md. Nov. 20, 2012) ("In determining . . . standing, this Court focuses 'on the party asserting the claim and *not the issue the party wishes to have adjudicated*.'" (emphasis added) (citation omitted)). In any event, even the borrowers whose loans *were* transferred under the alleged scheme would be hard pressed to establish Article III injury, since as alleged, they received *lower* rates as a result loanDepot's actions.

In a strained effort to cobble together an injury attributable to loanDepot, Plaintiffs breezily assert that loanDepot's transfer scheme resulted in them paying "higher rates." Compl. ¶ 48. That argument is doubly flawed. Plaintiffs' nebulous assertion that they had to pay "higher rates" is pure speculation. Plaintiffs offer no information about the rates they actually received, nor do they supply any plausible basis for this Court to conclude that they were forced to pay some unspecified "higher rates" (which they do not bother to articulate) or that they were otherwise eligible for or sought lower rates, as they claim others subjected to the transfer "scheme" did. *See supra* at pp. 7-8. The most Plaintiffs say is that they were made to pay "loans with higher rates and fees than were otherwise available at the company." Compl. ¶ 54; *see also* Compl. ¶ 48. But the Complaint is devoid of any facts suggesting that lower rates were actually "otherwise available" to Plaintiffs. *See supra* at pp. 5-6. That is precisely the type of abstract, speculative harm that courts have routinely rejected in determining whether plaintiffs have suffered an injury in fact. *See All. for Hippocratic Med.*, 602 U.S. at 380-81; *see also Boyko*, 39 F.4th at 189 (noting that the court "need

not accept . . . unwarranted inferences, unreasonable conclusions, or arguments" (cleaned up)).

Even if Plaintiffs could somehow identify a concrete injury, they have not drawn a causal connection between that alleged injury and loanDepot's alleged violation of TILA's LO Comp Rule. *See All. for Hippocratic Med.*, 602 U.S. at 368, 381. Indeed, Plaintiffs provide no explanation whatsoever for how the transfer of *other borrowers' loans* caused *Plaintiffs' loan officers* to charge them higher rates. Their only support is a blanket assertion that customers who were transferred received more favorable rates than they did.[4] However, given the innumerable factors involved in pricing loans—and the highly individualized circumstances for each borrower—the fact that other borrowers received lower rates does not mean that Plaintiffs could have also received lower rates. Because Plaintiffs fail to allege how *their specific loans* were affected by loanDepot's alleged conduct, they cannot establish a causal nexus between their injury and loanDepot's alleged misdeeds. *See Alston v. Fed. Home Loan Mortg. Corp.*, No. 20-cv-3272, 2022 WL 824849, at *4 (D. Md. Mar. 17, 2022) (dismissing claim where plaintiff failed to "allege the specific program that she would have qualified for, the favorable terms she would have been entitled to seek, how she would have altered her application for a loan modification, or how she would have qualified for a loan modification [absent the violation]").[5]

### B.    Plaintiff Rabinowitz Has No Standing

Named Plaintiff Alan Rabinowitz lacks standing to represent the putative class. Courts have consistently held that "a class representative must be part of the class and 'possess the same

---

[4] The Complaint also alleges loanDepot "required loan officers to charge an inflated interest rate/fees to borrowers," Compl. ¶ 29, but such conclusory statements carry no weight, even at the pleading stage. *See Beck*, 848 F.3d at 270 ("We do not, however, apply the same presumption of truth to conclusory statements and legal conclusions contained in [the] complaint." (cleaned up)).

[5] Plaintiffs effectively complain that loanDepot charged *everyone high rates*. *See* Compl. ¶ 7. But, even if true, that is merely a critique of the Company's baseline prices. Such a criticism—effectively, that loanDepot was expensive—does not properly state an injury in fact, much less support a TILA violation.

interest and suffer the same injury' as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 564

U.S. 338, 348-49 (2011) (citation omitted).

Here, Plaintiffs propose the following class:

All individuals in the United States who, between January 1, 2019, to the present, obtained a residential mortgage loan (as defined in 15 USC § 1602(dd)(5) of TILA) from loanDepot *through its retail division*, excluding from the class those persons whose loans were transferred to Internal Loan Consultants (the "Class"). Exempted from this class is any person who, during the period of January 1, 2019, to the present, was an employee, officer, member and/or agent of loanDepot, and any judicial officer who handles this case, and the immediate family members of such judicial officer(s).

Compl. ¶ 55 (emphasis added). Rabinowitz did not "obtain a residential mortgage loan . . . from

loanDepot through its *retail division*." *Id.* (emphasis added). He received his loan through

loanDepot's Direct division—an entirely separate channel that would not involve the illegal

transfer scheme alleged by Plaintiff. *See* Enison Decl. ¶¶ 5-7. As such, Rabinowitz falls squarely

outside the proposed class definition, and he should be dismissed as a named Plaintiff. *See Bezek*

*v. First Nat'l Bank of Pa.*, No. 17-cv-2902, 2023 WL 348967, at *11 (D. Md. Jan. 20, 2023) ("As

for loans that the parties agree do not meet the class definition, they are no longer part of the instant

action and will not be bound by any adjudication thereof.").

## II.    PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

"A court may dismiss a complaint on statute of limitations grounds 'if the time bar is

apparent on the face of the complaint.'" *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d

655, 658 (4th Cir. 2018) (citation omitted). Plaintiffs' TILA claim is subject to a three-year statute

of limitations, which "begin[s] on the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

More specifically, the "limitations period" for a TILA claim "begins to run from the date the loan

agreement is entered into." *Davis v. Edgemere Fin. Co.*, 523 F. Supp. 1121, 1123 (D. Md. 1981);

*see Suggs v. M & T Bank*, 230 F. Supp. 3d 458, 466 n.8 (E.D. Va. 2017) (explaining that courts "calculat[e] the statute of limitations from the date of closing of the loan").

It is apparent on the face of the Complaint that Plaintiffs filed their TILA claim outside the three-year limitations period. Plaintiffs have alleged violations of TILA's LO Comp Rule with respect to loans that closed on September 12, 2019 (Johnson); July 2, 2020 (Derrick); July 17, 2020 (Moore); April 9, 2021 (Rabinowitz); and June 16, 2021 (DeBaun). Compl. ¶¶ 49-53. Because the Complaint was filed on July 15, 2025—over one year after the expiration of the limitations period for the most recent loan—Plaintiffs' claims are time-barred.

Plaintiffs may argue that the Court should excuse their dilatory Complaint. But Plaintiffs have failed to plead any facts that would justify tolling the limitations period. In the Fourth Circuit, there are "equitable doctrines that potentially afford plaintiffs relief from a limitations period." *Edmonson*, 922 F.3d at 548. The only one that is potentially relevant here is "fraudulent concealment," which "applies in situations 'where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action.'" *Id.* at 549 (citation omitted). To invoke that doctrine, Plaintiffs must "make 'distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been made.'" *Minter v. Wells Fargo Bank, N.A.*, 675 F. Supp. 2d 591, 596 (D. Md. 2009) (quoting *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974)). The Complaint is bereft of any information about when or how Plaintiffs supposedly "discovered" loanDepot's alleged fraud. *Id.* More fundamentally, as explained *infra* at pp. 16-21, Plaintiffs have failed to allege fraud with the particularity required by Rule 9(b). *Scharpf v. Gen. Dynamics Corp.*, 137 F.4th 188, 195 (4th Cir. 2025) ("The normal pleading standards are heightened for allegations of

fraudulent concealment as Federal Rule of Civil Procedure 9(b) states that parties must allege 'fraud . . . with particularity.'"). Consequently, Plaintiffs cannot invoke the fraudulent concealment doctrine, and their claims should be dismissed as untimely. *See Ott*, 909 F.3d at 658.[6]

## III.    PLAINTIFFS FAIL TO STATE A CLAIM

Even assuming Plaintiffs had standing and filed this class action in a timely manner, their TILA claim still fails as a matter of law. *See* Fed. R. Civ. P. 12(b)(6). Plaintiffs allege that loanDepot violated TILA's LO Comp Rule. *See* 12 C.F.R. § 1026.36(d); 15 U.S.C. § 1639b. In Plaintiffs' view, loanDepot violated the LO Comp Rule because "loan officers were punished with reduced commission rates if they were unable to sell loans with higher rates." Compl. ¶ 2. But as discussed, the Complaint does not specify what these "higher rates" were or identify a specific instance in which a loan officer received lower compensation for failing to secure "higher rates." The Complaint instead focuses on alleging a complex, company-wide fraud, in which unnamed loan officers, with the encouragement of unidentified managers, lied (at unspecified times) about the reasons for transferring customers to ILCs. *See supra* at pp. 1-2.

These allegations are insufficient for two independent reasons, each of which requires dismissal. First, because Plaintiffs' claim sounds in fraud, they must satisfy Rule 9(b)'s heightened pleading standard. They utterly fail to do so. Second, Plaintiffs fail to allege the key elements necessary to state a claim under the LO Comp Rule. In particular, they fail to identify a specific "term of a transaction" and fail to provide any details about the compensation of the relevant "loan originators"—here, the ILCs.

---

[6] Plaintiffs would fare no better under the doctrine of "equitable estoppel"—which "applies 'where . . . the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline'"—or the doctrine of "equitable tolling"—which applies only where "some extraordinary circumstances stood in [plaintiff's] way and prevented timely filing." *Edmonson*, 922 F.3d at 549-51 (citations omitted). The Complaint does not allege facts to support the application of either doctrine. To the extent Plaintiffs invoke either doctrine by pointing to loanDepot's alleged fraud, any such argument would fail for the same reasons regarding the "fraudulent concealment" doctrine.

### A.    Plaintiffs Fail to Satisfy Rule 9(b)'s Heightened Pleading Standard

Under Rule 9(b)'s heightened pleading standard, plaintiffs "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The purpose of this requirement is to "prevent frivolous suits, stop fraud actions where everything is learned after discovery (i.e., fishing expeditions), and to protect defendants' reputations." *Nicholson*, 42 F.4th at 195. In other words, Rule 9(b) is designed to stop lawsuits like this one from going forward. Plaintiffs have alleged a fraudulent scheme that, if proven true, would have serious consequences for loanDepot and its employees. But they have not included a single detail about this alleged scheme. Nor have they explained how they supposedly know about it. This Court should reject Plaintiffs' transparent attempt to harm loanDepot's reputation based on bare speculation.

### 1.    Plaintiffs' Claim Sounds in Fraud and Thus Is Subject to Rule 9(b)

All "[c]laims that sound in fraud, whether rooted in common law or arising under a statute, implicate the heightened standard of Rule 9(b)." *Bowman*, 704 F. Supp. 3d at 640-41 (citation omitted); *see, e.g.*, *Nicholson*, 42 F.4th at 195-96; *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999). In other words, "Rule 9(b) applies to 'all averments of fraud,'" and "[i]ts application should depend on the substance of a plaintiff's allegations, not upon the guise in which he portrays them." *Hershey v. MNC Fin., Inc.*, 774 F. Supp. 367, 376 (D. Md. 1991).

Courts across the country—in this jurisdiction and others—have concluded that claims arising under TILA that sound in fraud thereby implicate Rule 9(b). For instance, in *Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787 (D. Md. 1998), the court stated that TILA is a "remedial statute directed at fraud." *Id.* at 793. Consistent with that principle, courts have expressly held that claims arising under TILA are subject to Rule 9(b). *See, e.g.*, *Fid. Mortg. Corp. v. Seattle*

*Times Co.*, 213 F.R.D. 573, 575 (W.D. Wash. 2003) (explaining that "all three statutory claims"—including a TILA claim—"are premised on the allegation that the [defendant] knowingly published false, deceptive, and/or misleading information damaging to the plaintiff" and thus "must satisfy the particularity requirement of Rule 9(b)" (cleaned up)); *Heise v. Porcelli*, No. 07-cv-1866, 2008 WL 2439884, at *5 (M.D. Fla. June 13, 2008) (holding that "Plaintiffs' truth in lending claim . . . lacks the specificity required by Rule 9(b)"); *see also, e.g.*, *Evans v. Rudy-Luther Toyota, Inc.*, 39 F. Supp. 2d 1177, 1185 (D. Minn. 1999) (holding that plaintiffs who invoke the doctrine of fraudulent concealment to toll TILA's statute of limitations are subject to Rule 9(b)).

Even if Rule 9(b) does not categorically apply to all TILA claims, Plaintiffs' claim here must satisfy Rule 9(b)'s heightened pleading standards because it turns on allegations of widespread fraud. As a court in this jurisdiction explained, claims that "are not fraud claims in and of themselves" may be "construed as averring fraud" when they "contain[] references to [a] 'scam' or 'scheme to defraud,'" or allege "acts of [defendants] that 'deceived.'" *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 476 n.3 (D. Md. 2009). Here, the Complaint does not simply "contain[] references" to fraud—it is replete with allegations about "sham transfers," Compl. ¶¶ 3, 24-25, 32-34, 40-42; "concealment" of unlawful practices, Compl. ¶¶ 4, 41, 59; and the "falsification of internal forms and federal disclosures," Compl. ¶¶ 2, 4-5, 24-25, 34-35, 37-41, 43. Accordingly, there can be little doubt that Plaintiffs' "claims constitute 'averments of fraud'" and are subject to Rule 9(b). *Hershey*, 774 F. Supp. at 375.

### 2.    Plaintiffs Fail to Provide Sufficient Details About the Alleged Fraud

Under Rule 9(b), Plaintiffs must include particularized details about "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Edmonson*, 922 F.3d at 553 (citation omitted); *see Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007) (explaining that plaintiffs alleging

fraudulent concealment must "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments"). "Allegations of the circumstances of a fraud based on information and belief, which are commonplace and often a necessity in many litigation contexts, usually do not satisfy the particularity requirement of Rule 9(b)." Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1298 (4th ed.).[7]

The Fourth Circuit has provided significant guidance about what Rule 9(b) requires when plaintiffs claim that a company has engaged in a fraudulent scheme involving false representations by employees and agents. In *Harrison*, the Fourth Circuit affirmed the dismissal of certain claims brought under the False Claims Act against Westinghouse Savannah River Corp. ("WSRC"), a federal contractor who managed and operated a Department of Energy ("DOE") facility. 176 F.3d at 780. The relator, who worked for one of WSRC's subcontractors, had alleged (1) that WSRC submitted a "purchase requisition form" to DOE that "contained 'fraudulent and/or unauthorized signatures,'" and (2) that "WSRC directed . . . subcontractors to purchase supplies and charge them" in a way that inflated operating costs. *Id.* at 782-83. The Fourth Circuit held that neither claim included enough detail to satisfy Rule 9(b). With respect to the claim about the purchase requisition form, the court explained that the relator did "not state which signature was fraudulent or unauthorized, nor who perpetrated the fraud, nor how the signature was fraudulent." *Id.* at 789. And as to the claim about WSRC's direction to subcontractors, the court observed that the relator did "not say or even hint who ordered the subcontractors to purchase items, which subcontractors were so ordered, when they were ordered, nor what they were ordered to purchase." *Id.*

---

[7] The Fourth Circuit applies a slightly "relaxed Rule 9(b) standard for allegations of fraud by omission or concealment, given that critical facts related to such allegations are uniquely within the defendant's knowledge and control." *Corder v. Antero Res. Corp.*, 57 F.4th 384, 401-02 (4th Cir. 2023). In such cases, "allegations based on information and belief may suffice, so long as the allegations are accompanied by a statement of facts upon which the belief is founded." *Id.* at 402 (citation omitted). Plaintiffs fall woefully short even under this "relaxed" standard, as the Complaint supplies no facts supporting their unfounded "beliefs" about loanDepot's alleged fraud.

Similarly, in *Nicholson*, the Fourth Circuit affirmed the dismissal of an action brought under the Anti-Kickback Statute, which makes it "illegal for any person to knowingly solicit or receive" a fee for selling a good to "a [f]ederal health care program." 42 F.4th at 194 (citing 42 U.S.C. § 1320a-7b(b)(1)(B)). The plaintiff, a former employee of a life sciences company called Integra, alleged that Integra conspired with another company to pay independent contractors, "at least in part by commission, to furnish skin-graft products to federal healthcare programs like VA hospitals." *Id.* at 190. The plaintiff "offer[ed] a sketch of one such sale, from a salesperson called Holloway to a Dr. Phillips at a VA hospital, around November 2016, for at least $3,000." *Id.* The Fourth Circuit held that the allegations were insufficient under Rule 9(b). After noting that "[h]ow [the plaintiff] knows all this is obscure," the court explained that the "Complaint includes no information about how the payments were split up or how representatives were paid" and "provides no detail about the actual inducement of sales, whether and how representatives were supposed to push the product." *Id.* at 191, 195. As to the one example the plaintiff provided, the Fourth Circuit observed that "[t]he patient is unknown, the first names of the other two participants are unknown, who submitted the claim is unknown, who was paid the $3,000 is unknown, whether it was $3,000 or much more than $3,000 is unknown, what VA hospital in what state is unknown (how many Dr. Phillips are there in the country?), and so on." *Id.* at 196.

Courts in this jurisdiction have relied on similar logic to dismiss claims asserting mortgage fraud. For instance, in *Bowers v. Legum & Norman Realty Inc.*, 776 F. Supp. 3d 294 (D. Md. 2025), the court dismissed the plaintiffs' "mortgage fraud conspiracy claim" because the plaintiffs "fail[ed] to identify Defendant's alleged co-conspirators with any particularity." *Id.* at 309. Similarly, in *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249 (D. Md. 2015), the court dismissed the plaintiffs' mortgage fraud claims—which were based on an allegation that the

defendant submitted "false reports to credit reporting agencies"—because the plaintiffs did not "provide a date when these statements were made, to which agencies, or how the [plaintiffs] learned of the reports." *Id.* at 272-73.

By contrast, in *Edmonson*, the Fourth Circuit reversed the dismissal of an action brought under RESPA, "which forbids, among other things, any person from giving or accepting [a] fee . . . pursuant to an agreement or understanding . . . as part of a real estate settlement service involving a federally related mortgage loan." 922 F.3d at 541 (citing 12 U.S.C. § 2607(a)) (cleaned up). The plaintiffs, all of whom had obtained residential mortgages from the defendant banks and mortgage companies (collectively, the "Lenders"), alleged that mortgage brokers and loan officers associated with the Lenders had referred them to Genuine Title, LLC—a title insurance and escrow company—in exchange for kickback payments. *Id.* at 541. They also alleged that the Lenders and Genuine Title fraudulently concealed this scheme by setting up "sham entities" to make payments on behalf of Genuine Title and "shell companies" to receive those payments on behalf of the Lenders. *See id.* at 541-42. The Fourth Circuit held that the plaintiffs' allegations were sufficient under Rule 9(b) because "[t]he complaints allege the names of the sham entities, the broker or loan officer connected to each sham entity, and the dates Genuine Title allegedly funneled kickback payments through the entities." *Id.* at 553.

Taken together, these cases establish the basic requirements that plaintiffs must satisfy when they allege that a company executed a fraudulent scheme involving false representations by agents and employees. At the very least, plaintiffs must (1) name the responsible agents or employees, (2) list the specific misrepresentations those agents or employees made and the dates they occurred, and (3) detail any monetary payments or goods that the agents or employees obtained. *See Harrison*, 176 F.3d at 789; *Nicholson*, 42 F.4th at 195-96; *Edmonson*, 922 F.3d at

553; *see also Bowers*, 776 F. Supp. 3d at 309; *Ayres* 129 F. Supp. 3d at 273. Additionally, providing a single example of the alleged conduct is insufficient to support a claim of company-wide fraud. *See Harrison*, 176 F.3d at 789; *Nicholson*, 42 F.4th at 195-96.

The Complaint fails to satisfy any of these requirements. Like the complaints in *Harrison* and *Nicholson*, the Complaint "does not say or even hint" who the responsible employees were. *See Harrison*, 176 F.3d at 789; *Nicholson*, 42 F.4th at 195-96. It does not name the loan officers who allegedly lied about the reasons for transferring loans to the ILCs, the managers who allegedly directed the loan officers to do so, or the individuals who allegedly prepared false, albeit unidentified, "federal lending forms." Nor does it identify the alleged misrepresentations those individuals made, the dates on which they made those misrepresentations, or the money they obtained as a result. And unlike the plaintiffs in *Harrison* and *Nicholson*, who at least tried to provide illustrative examples, Plaintiffs have not provided a single example of a false statement by a loanDepot employee. *Harrison*, 176 F.3d at 780-81; *Nicholson*, 42 F.4th at 190. Moreover, unlike the plaintiffs in *Harrison* and *Nicholson*, who at least tried to "offer some support for how [they] knew about the scheme[s]," Plaintiffs have not attempted to explain how they "know[] all this." *Nicholson*, 42 F.4th at 191. Thus, the Complaint falls far short of even the insufficient allegations from *Harrison* and *Nicholson* and should be dismissed under Rule 9(b).

### B.    Plaintiffs Do Not Adequately Allege a Violation of the LO Comp Rule

Separate and apart from Plaintiffs' failure to satisfy Rule 9(b), Plaintiffs fail to state a claim under the LO Comp Rule. As noted, the LO Comp Rule provides that "no loan originator shall receive and no person shall pay to a loan originator, directly or indirectly, compensation in an amount that is based on a term of a transaction." 12 C.F.R. § 1026.36(d)(1)(i); *see* 15 U.S.C. § 1639b(c). Although no court has had the opportunity to interpret this provision, its text makes clear that to state a claim, Plaintiffs must identify a "loan originator" whose "compensation" was

"based on a term of a transaction." For at least two reasons, Plaintiffs have failed to do so.

*First*, Plaintiffs have not adequately alleged a "term of a transaction" on which loan officers' compensation was based. The Complaint contains only vague generalizations claiming that loan officers' compensation was based on whether they secured "higher rates," Compl. ¶ 2, or "inflated rates," Compl. ¶ 29. It does not identify a single instance in which a loan officer received lower compensation for failing to sell loans at higher rates, let alone specify what that compensation was or what those rates were. Put differently, Plaintiffs' allegations about loan officer compensation are nothing more than "[t]hreadbare recitals of the elements of" the LO Comp Rule, *Boyko*, 39 F.4th at 193, with the word "rates" substituted for "term of a transaction." *See generally* Compl. They are therefore insufficient to state a claim under TILA's LO Comp Rule. *Nicholson*, 42 F.4th at 195 (deeming allegations insufficient because they were "in essence just a restatement of the legal standards we outlined above, plus the [defendant's] name"); *cf. Ryan S. v. UnitedHealth Grp., Inc.*, 98 F.4th 965, 974-75 (9th Cir. 2024) (explaining that under ERISA, beneficiaries of ERISA-covered health plans who sue to obtain benefits under those plans "must identify a specific plan term that confers the benefit in question" (citation omitted)).

*Second*, Plaintiffs fail to allege that ILCs—who are the loan originators for loans that are referred to them—are compensated "based on a term of a transaction." The LO Comp Rule defines "loan originator" to mean "a person who . . . takes an application, offers, arranges, assists a consumer in obtaining or applying to obtain, negotiates, or otherwise obtains or makes an extension of consumer credit for another person." 15 C.F.R. § 1026.36(a)(1)(i). Plaintiffs allege that loan officers who were unable to sell loans at high rates were required to transfer their loans to ILCs and were paid lower compensation as a result. *See* Compl. ¶ 32. In this alleged scenario, however, the ILC is the "person who . . . assists [the] consumer in obtaining . . . consumer credit"

and thus is the relevant "loan originator." 15 C.F.R. § 1026.36(a)(1)(i). The Complaint contains no allegations about the compensation of ILCs, let alone any allegations suggesting that ILCs were compensated "based on a term of a transaction." *See generally* Compl. And although Plaintiffs allege that ILCs had no role in servicing loans, Compl. ¶ 54, these allegations are not plausible on their face. Indeed, as Plaintiffs themselves admit, loanDepot's internal forms and federal lending forms "reflect that the ILC was the responsible loan officer." Compl. ¶ 41. Consequently, Plaintiffs' "conclusory assertions" that ILCs performed no duties "do not suffice" to state a plausible claim that loan officers, not ILCs, were the "loan originators" for transferred loans. *See Boyko*, 39 F.4th at 193.

## IV.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs assert a single time-barred TILA claim that lacks any basis in law or fact. They have provided no reason for this Court to conclude that they have firsthand knowledge of any of the facts alleged. And they seek damages for a group of borrowers who were not affected by the alleged fraud.

As the Fourth Circuit has explained, "[d]istrict courts have inherent power to manage their dockets with an eye toward speedy and efficient resolutions . . . and part of that power is the use of with-prejudice dismissals." *Nicholson*, 42 F.4th at 196 (citation omitted). In similar cases involving insufficient allegations of fraud, courts in the Fourth Circuit have exercised that discretion and dismissed cases with prejudice. *See, e.g.*, *id.* at 200; *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 112-13 (4th Cir. 2025).

This Court should do the same here. As discussed, Plaintiffs have not even attempted to provide information that could justify tolling the statute of limitations. *See supra* at pp. 14-15. And their allegations regarding fraud contain even less detail than complaints the Fourth Circuit has dismissed with prejudice. *See supra* at pp. 18-21; *Nicholson*, 42 F.4th at 196-97. They have failed

to provide any reason for this Court to conclude that they have knowledge of the facts they allege and allowing them to amend the Complaint would therefore be futile.

Federal courts should not serve as a venue for plaintiffs and their attorneys to make sweeping claims of fraud without any facts or evidence. Dismissing without prejudice here will incentivize Plaintiffs and others like them to bring unsupported claims against defendants, secure in the knowledge that, even if they fail on the first try (as Plaintiffs do here), they can get a second bite at the apple to attack the reputation and good name of companies like loanDepot. This Court should not countenance that practice.

## V.   THE COURT SHOULD STRIKE IMMATERIAL ALLEGATIONS FROM THE COMPLAINT

In addition to the pleading defects described above, Plaintiffs also make several assertions that "have no possible or logical connection" to its TILA claim and will cause "significant prejudice" to loanDepot if they remain. *Gilman & Bedigian*, 337 F.R.D. at 117. The Court should exercise its power under Rule 12(f) to strike those allegations from the Complaint because they are "immaterial, impertinent, [and] scandalous." Fed. R. Civ. P. 12(f).

Most egregiously, the Complaint claims that loanDepot has "potentially" violated "federal criminal statutes, including Wire Fraud (18 U.S.C. § 1343), Securities Fraud (18 U.S.C. § 1348), False Statements (18 U.S.C. § 1001), and Conspiracy (18 U.S.C. § 371)." Compl. ¶ 47. Plaintiffs also repeatedly accuse loanDepot of violating a nonexistent statutory provision ("15 USC §1939 (b)(c)(1)"). Compl. ¶¶ 48(b), (e). District courts routinely strike prejudicial allegations of wrongdoing that are unrelated to the claims actually asserted by plaintiffs. *See, e.g.*, *Suprock v. Quantum Energy, Inc.*, 676 F. Supp. 3d 891, 896-97 (D. Nev. 2023) (striking allegations suggesting "criminal conduct, looting, fugitive status, and criminal and civil contempt"—allegedly prior conduct of those running the defendant company—due to their irrelevance to "plaintiffs'

breach-of-contract claim"); *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 512 (S.D.N.Y. 2013)

(striking allegation in complaint about company's alleged "mistreatment of customers" because it

was "immaterial and irrelevant to" plaintiff's case for failure to pay wages and thus "serve[d] no

purpose except to inflame the reader" (citation omitted)); *Giuliani v. Polysciences, Inc.*, 275 F.

Supp. 3d 564, 574 (E.D. Pa. 2017) (striking allegations about employer's alleged discrimination

on the basis of gender and political stances in suit alleging only age discrimination); *Tucker v. Am.*

*Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 25 (D. Conn. 2013) (striking "allegations regarding 'artificially

inflating loss reserves to improve the appearance of [defendant's] financial health' and 'bid-

rigging and commission-related kickbacks to brokers,' neither of which [we]re relevant to th[e]

action" for breach of contract for unlawful discharge). So, too, here: Plaintiffs' unsupported

allegations about loanDepot's noncompliance with a myriad of criminal provisions, real and

imagined, are entirely irrelevant to Plaintiffs' civil TILA claim. To make matters worse, Plaintiffs

do not even try to explain how or why loanDepot's alleged conduct runs afoul of those statutory

provisions. The careless suggestion that loanDepot has "potentially" committed federal crimes—

in a public court filing available to investors, customers, and competitors—casts aspersions to

cause "significant prejudice" to loanDepot. *Gilman & Bedigian*, 337 F.R.D. at 117.

The Complaint also contains several immaterial statements claiming that loanDepot's

conduct has negatively impacted other mortgage lenders. *See* Compl. ¶¶ 1-2, 5, 7, 29. As the

Supreme Court has explained, "[t]he purpose of the TILA is to promote the 'informed use of credit'

by consumers"—not other mortgage lenders. *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219

(1981) (citation omitted). So Plaintiffs' allegations about other lenders (who are not even named

in the Complaint) are wholly immaterial (not to mention patently false) and could cause significant

harm to loanDepot's reputation and business. Thus, at a minimum, the Court should strike the

inflammatory and immaterial allegations from Plaintiffs' Complaint.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice, or, in the alternative, strike certain immaterial allegations from the Complaint.

Dated: September 12, 2025

Respectfully submitted,

COOLEY LLP

By: */s/ David E. Mills*

David E. Mills (Bar No. 16654)
Michelle L. Rogers (*pro hac vice*)
Raymond P. Tolentino (*pro hac vice*)
Elias S. Kim (*pro hac vice*)
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004-2400
Telephone: +1 202 842 7800
Facsimile: +1 202 842 7899
dmills@cooley.com
mrogers@cooley.com
rtolentino@cooley.com
ekim@cooley.com

Miranda Li (*pro hac vice*)
3 Embarcadero Center
20th Floor
San Francisco, CA 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222
mjli@cooley.com

*Attorneys for Defendant loanDepot.com, LLC*