IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NATHAN JOHNSON, RACHEL DeBAUN, NATHAN MOORE, and SHAWN DERRICK, on behalf of themselves as well as a Class of all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>LOANDEPOT.COM, LLC,<br><br>Defendant. | Civil Action No. 1:25-CV-02294-JRR |

**DEFENDANT LOANDEPOT.COM, LLC'S REPLY
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I.    Plaintiffs Have Not Plausibly Alleged Standing ...................................................... 2

        A.    Plaintiffs' Conclusory Assertion that They Paid "Higher Rates and Fees" Does Not Adequately Plead an Injury in Fact ................................. 2

        B.    Plaintiffs Plead No Facts that Could Allow the Court to Determine Whether Their Alleged Injury Is Fairly Traceable to loanDepot's Alleged Conduct ....................................................................................... 6

    II.    Plaintiffs' Failure to Allege Fraud with Particularity Requires Dismissal for Two Independent Reasons ................................................................................. 8

    III.    Even Under the Plausibility Pleading Standard, Plaintiffs Have Failed to State a Violation of the LO Comp Rule ................................................................. 12

    IV.    It Is Undisputed that Dismissal Should Be with Prejudice ................................. 15

CONCLUSION ........................................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alston v. Fed. Home Loan Mortg. Corp.*,
   No. 20-cv-3272, 2022 WL 824849 (D. Md. Mar. 17, 2022) ............................................. 4, 5

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988) ............................................................................................................ 13

*Bowman v. Select Portfolio Servicing, Inc.*,
   704 F. Supp. 3d 633 (D. Md. 2023) ......................................................................... 8, 13, 15

*Conservation L. Found., Inc. v. Acad. Express, LLC*,
   129 F.4th 78 (1st Cir. 2025) .............................................................................................. 7, 8

*Corder v. Antero Res. Corp.*,
   57 F.4th 384 (4th Cir. 2023) ............................................................................................ 9, 10

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332, 342 n.3 (2006) ................................................................................................ 8

*Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*,
   958 F.3d 38 (1st Cir. 2020) ................................................................................................... 8

*Edmonson v. Eagle Nat'l Bank*,
   922 F.3d 535 (4th Cir. 2019) ......................................................................................... 11, 12

*Eidelman v. Sun Prod. Corp.*,
   No. 21-cv-1046, 2022 WL 1929250 (2d Cir. June 6, 2022) .............................................. 2-3

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
   No. 21-cv-269, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022) ..................................... 2, 3, 6

*In re Google Android Consumer Privacy Litigation*,
   No. 11-md-02264, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ........................................ 4

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,
   903 F.3d 278 (3d Cir. 2018) .............................................................................................. 3, 8

*Johnson v. Wheeler*,
   492 F. Supp. 2d 492 (D. Md. 2007) .................................................................................... 11

*Knudsen v. MetLife Grp.*,
   117 F.4th 570 (3d Cir. 2024) ................................................................................................. 4

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) ............................................................................................................ 13

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Maxwell v. Union Fid. Mortg., Inc.*,
   No. 08-cv-001329, 2009 WL 426189 (E.D. Cal. Feb. 19, 2009) ..............................................9

*MSP Recovery Claims, Series LLC v. Lundbeck LLC*,
   130 F.4th 91 (4th Cir. 2025) ................................................................................................15

*Naimi v. Starbucks Corp.*,
   798 F. App'x 67 (9th Cir. 2019) .........................................................................................3, 4

*United States ex rel. Nicholson v. MedCom Carolinas, Inc.*,
   42 F.4th 185 (4th Cir. 2022) ................................................................................................10

*Proctor v. Metro. Money Store Corp.*,
   645 F. Supp. 2d 464 (D. Md. 2009) .......................................................................................9

*Scharpf v. Gen. Dynamics Corp.*,
   137 F.4th 188 (4th Cir. 2025) ...........................................................................................9, 10

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)............................................................................................................2, 6

*Wilson v. Eagle Nat'l Bank*,
   No. 20-cv-1344, 2023 WL 2478933 (D. Md. Mar. 13, 2023) .................................................5

**Regulations and Rules**

12 C.F.R. § 1026.36(d)(1)(i)...........................................................................................................15

Fed. R. Civ. P. 9(b) ................................................................................................1, 8, 9, 10, 11

**Miscellaneous**

Restatement (Third) of Torts: Liability for Physical & Emotional Harm (Am. L.
   Inst. 2010) .............................................................................................................................8

**INTRODUCTION**

Plaintiffs have filed an out-of-time complaint that fails to allege any facts showing that they have Article III standing, makes bold accusations of fraud without describing any of the particulars, and implausibly claims that a handful of out-of-context emails from a single former employee establishes a nationwide compensation policy that violates the LO Comp Rule. Far from rehabilitating the First Amended Complaint ("FAC"), Plaintiffs' opposition lays bare its flaws.

Most revealingly, Plaintiffs address the merits before the threshold issue of standing. Their logic appears to be that if they can establish a violation of the LO Comp Rule, a cognizable injury automatically follows. That approach gets it backwards—standing is a jurisdictional issue that the Court must resolve before addressing the merits, and the Supreme Court has held that alleging a statutory violation does not automatically confer standing. Here, Plaintiffs' conclusory assertion that loanDepot's conduct caused them to pay (unspecified) higher prices does not pass muster.

On fraud, Plaintiffs concede that Rule 9(b)'s heightened pleading standard at least applies to their fraudulent concealment theory. Although they (incorrectly) argue for a "relaxed" version of that standard, no version excuses them from specifying the time and place of the alleged fraudulent acts, as well as the responsible individuals. Their failure to identify a single instance in which a specific loan officer fraudulently transferred a loan thus dooms their theory. And as they concede, the FAC must be dismissed unless they show fraudulent concealment.

Finally, Plaintiffs fail to explain why the FAC adequately alleges a nationwide violation of the LO Comp Rule. They primarily point to a handful of unadjudicated CFPB complaints and a consent decree, all from over a decade ago. The Court owes no deference to the CFPB's litigating positions, and in any event, those cases involved wildly different compensation practices. Plaintiffs also highlight a handful of instances in which loanDepot reduced the rates of loans transferred to ILCs. But those citations only underscore that Plaintiffs fall far short of alleging a plausible claim.

**ARGUMENT**

I. **PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED STANDING**

   A. **Plaintiffs' Conclusory Assertion that They Paid "Higher Rates and Fees" Does Not Adequately Plead an Injury in Fact**

Plaintiffs do not dispute that the FAC says nothing about their rates, the rates they allegedly would have paid absent loanDepot's conduct, or any other facts about their loans or loan officers. They have thus failed to allege a concrete, particularized injury. ECF No. 32-1 at 12 ("Mot.").

Plaintiffs nevertheless contend that they sufficiently allege injury in fact because the FAC "alleges they personally paid higher rates and fees because they were subjected to an unlawful practice that systematically directed and incentivized loan officers to offer higher initial pricing and encouraged borrowers to close the loans with those higher rates because of a financial incentive the loan officer received." ECF No. 38 at 22 ("Opp."). In other words, Plaintiffs' position is that a plaintiff plausibly alleges a concrete, particularized injury so long as she asserts in a single sentence that she paid a higher price than she would have absent the defendant's conduct.[1]

Courts in the Fourth Circuit and across the country have emphatically rejected such allegations as insufficient. To be sure, a plaintiff can "plead[] economic injury" by alleging that "the purchase price of a product exceeds the actual value of the product after taking into account a defendant's improper actions." *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, No. 21-cv-269, 2022 WL 10197651, at *5 (E.D. Va. Oct. 17, 2022). And a specific application of that "basic principle" is a "price premium theory," under which a plaintiff alleges that he "'paid more for a product than he otherwise would have.'" *Id.* at *5, *8 (quoting *Eidelman v. Sun Prod. Corp.*,

---

[1] Plaintiffs start by asserting that "A Violation of the LOC Rule Demonstrates Injury in Fact." Opp. at 19. To the extent Plaintiffs are arguing that they have established Article III standing simply by alleging a violation of the LO Comp Rule, the Supreme Court has squarely rejected that argument. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (holding that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right").

No. 21-cv-1046, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022)). But to survive a motion to dismiss on such a theory, a plaintiff must allege specific facts indicating that she paid more for the product than she would have absent the defendant's conduct—she need not "allege the *exact* value of her economic injury at the pleading stage," but she "must set forth sufficient factual allegations that, if proven true, would permit a factfinder to determine that she suffered at least *some* economic injury." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 287 (3d Cir. 2018). In other words, "[t]he bare recitation of the word 'premium'"—or as Plaintiffs put it here, "higher rates and fees," Opp. at 22—"does not adequately allege a cognizable injury." *Naimi v. Starbucks Corp.*, 798 F. App'x 67, 70 (9th Cir. 2019).

A recent decision from the Eastern District of Virginia provides helpful guidance. In *Gerber*, the plaintiffs alleged that a baby food company violated various state laws prohibiting deceptive and unfair trade practices by failing to disclose that its products contained heavy metals. 2022 WL 10197651, at *2. The plaintiffs had purchased the relevant products and asserted a "price premium theory" for standing, arguing that the defendant's "omissions with respect to Heavy Metals permitted [the defendant] to command a higher price in the marketplace for its products than it otherwise would have, causing Plaintiffs to overpay and robbing them of the benefit of their bargain." *Id.* at *9. The court rejected this theory and dismissed the complaint because, "[a]lthough Plaintiffs allege they 'overpaid' for Defendant's Baby Food Products, . . . they do not allege how much they paid for the Baby Food Products, how much they would have paid had the material facts been disclosed, or any other details regarding the alleged price premium." *Id.* at *10.

Numerous courts have rejected nearly identical standing allegations across various areas of the law. For instance, in *Naimi*, the court rejected the plaintiffs' price-premium theory and dismissed their complaint because they "did not allege how much they paid for the [the product],

how much they would have paid for it absent the alleged deception, whether [the defendant] (as opposed to a third-party distributor) was responsible for any overpayment, or any other details regarding the price premium." 798 F. App'x at 70. Similarly, in *Knudsen v. MetLife Grp.*, 117 F.4th 570 (3d Cir. 2024), the court dismissed an ERISA claim for lack of standing because the plaintiffs—who asserted that they "paid more for their health insurance" because of the defendant's conduct—failed to "allege which out-of-pocket costs increased, in what years, or by how much." *Id.* at 578-82. And in *In re Google Android Consumer Priv. Litig.*, No. 11-md-02264, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013), a case in which the plaintiffs claimed that Google's representations about privacy features caused the plaintiffs to pay more for Android devices than they otherwise would have, the court dismissed for lack of standing because the plaintiffs failed to "allege which Android devices they purchased or how much those devices cost." *Id.* at *6.

Plaintiffs' half-hearted attempt to resist this standard lacks merit. Relying on *Alston v. Fed. Home Loan Mortg. Corp.*, No. 20-cv-3272, 2022 WL 824849 (D. Md. Mar. 17, 2022), Plaintiffs contend that "financial injury need not even be directly or clearly pled" and that the court can simply "'infer' an economic harm." Opp. at 21 (citing *Alston*, 2022 WL 824849, at *3). But *Alston* says nothing of the sort. In *Alston*, the plaintiff alleged that she had requested a loan modification "due to Covid-19 ramifications in the economy" and that the defendant's violation of TILA led to the denial of her request. 2022 WL 824849, at *3. The court determined that she had sufficiently alleged injury because her statement that she sought the modification due to the financial exigencies presented by COVID made clear that a "modification would have been financially favorable to her." *Id.* In other words, the plaintiff explained that she expressly sought an economic benefit and that it had been denied. Here, by contrast, Plaintiffs have not alleged that they sought a lower rate (or were eligible for one). Mot. at 6. Indeed, unlike the plaintiff in *Alston*, Plaintiffs

have failed to provide any details about the circumstances surrounding their loans, let alone their decision to agree to the terms of their loans. Accordingly, *Alston*—in which the court ultimately concluded that the plaintiff lacked standing because she did not plausibly allege her injury was traceable to the defendant's conduct—has no bearing on this case. 2022 WL 824849, at *4.

Likewise, although Plaintiffs rely heavily (Opp. at 19-20) on *Wilson v. Eagle Nat'l Bank*, No. 20-cv-1344, 2023 WL 2478933 (D. Md. Mar. 13, 2023), that case further demonstrates why Plaintiffs' allegations are insufficient. In *Wilson*, the plaintiffs alleged that Eagle National Bank and its loan officers violated RESPA by accepting kickbacks from a title company called "All Star" and explained in detail how the individuals they worked with at All Star charged them higher fees to "pay for the kickbacks." *Id.* at *1, *7. For instance, the complaint alleged that named plaintiff Sam Wilson "obtain[ed] a residential mortgage loan from the Eagle Defendants through Gary Becker, a loan officer the Eagle Defendants employ at the Eagle Forest Hill Branch"; that "Becker assign[ed] and refer[red] the Wilson Eagle loan to All Star as quid pro quo for the kickbacks"; that "[t]he Eagle Defendants and All Star charge[d] Wilson the agreed fixed price of $1,300.00 in total title and settlement service fees"; and that those fees "include[d] the $50 Eagle Overcharge and $300 Kickback Overcharge." Amended Class Complaint ¶¶ 91-94, *Wilson*, No. 20-1344 (D. Md. Sept. 30, 2020), ECF No. 33. The plaintiffs also submitted an email in which a representative from All Star stated: "Let's start with bumping the fees up by $200 in each category." Exhibit 17 at 1, *Wilson* (July 1, 2022), ECF No. 112-18.

The *Wilson* plaintiffs did everything Plaintiffs here have failed to do. They identified the loan officers they worked with, alleged that those loan officers violated the law in a way that personally affected them, described the fees they paid, and explained why those fees were greater than they would have been absent the kickbacks (and by how much). Plaintiffs here have done

none of that—as they acknowledge, the FAC simply alleges that "they personally paid higher rates and fees." Opp. at 22. Plaintiffs do not even identify the loan officers they worked with, let alone provide any details that could allow the Court to determine whether those loan officers (or any loan officers in Plaintiffs' region) were subject to the alleged policy. Mot. at 13-14. Thus, unlike the *Wilson* plaintiffs, Plaintiffs here "fail to allege any facts substantiating their conclusory allegations that would permit the court to determine the economic value of their alleged lost benefit without resorting to mere conjecture." *Gerber*, 2022 WL 10197651, at *10.

### B. Plaintiffs Plead No Facts that Could Allow the Court to Determine Whether Their Alleged Injury Is Fairly Traceable to loanDepot's Alleged Conduct

Plaintiffs' arguments about traceability also lack merit. According to Plaintiffs, they do not have to explain how their injury is traceable to loanDepot's conduct because "Congress, The Federal Reserve Board, and the CFPB determined that incentivizing loan officers to charge higher rates would cause consumers to pay more for their loans." Opp. at 23. But *Spokeo* expressly rejected that position, emphasizing that a person does not have standing simply because "a statute grants [that] person a statutory right and purports to authorize that person to sue to vindicate that right." 578 U.S. at 341. For instance, FCRA embodies Congress's finding that inaccuracies in credit reports can cause harm. *Id.* at 335. But it does not follow that "all inaccuracies cause harm or present any material risk of harm"—thus, a FCRA plaintiff must show that she suffered harm that is traceable to the defendant's preparation of an inaccurate credit report. *Id.* at 342.

The same is true of the LO Comp Rule. Although Congress and the CFPB have determined that a violation of the LO Comp Rule *can* lead to higher interest rates, it does not follow that every violation of the LO Comp Rule *does* lead to higher interest rates. *See* Mot. at 2-3, 15. Even if a loan officer's compensation plan incentivizes him to push for an above-market rate, there is no guarantee of success—as discussed, borrowers always have the ability to negotiate for lower rates.

*See supra* at 4. Accepting Plaintiffs' theory would require the Court to conclude that every salesperson with commission-based compensation obtains an above-market price in every sale he makes. Neither law nor logic supports that conclusion.

Plaintiffs effectively concede this point. Describing the borrowers who allegedly received lower interest rates after being transferred to ILCs, Plaintiffs state: "Frankly, the families that obtained loans where they negotiated lower rates and for whom the loan officers received lowered commission were just as much subject to the illegal compensation scheme as the Plaintiffs before you. The only reason that they were not included in the class definition involved whether they could meet the Article III standard in Federal Court." Opp. at 21 n.11. In other words, Plaintiffs recognize that loanDepot's alleged violation of the LO Comp Rule did not injure all borrowers. Indeed, every loanDepot borrower had the ability to negotiate market or below-market interest rates. *See* Mot. at 3. There is no indication that only the borrowers transferred to ILCs did so.

Ultimately, the FAC fails to establish traceability for the same reason it fails to establish a cognizable injury: it provides no details about the rates Plaintiffs paid. As loanDepot has explained, there are innumerable factors involved in pricing loans. Mot. at 15. To be sure, "[a] plaintiff can satisfy traceability by showing 'that the defendant's conduct is one among multiple causes' of the alleged injury." *Conservation L. Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 90 (1st Cir. 2025) (citation omitted). But to evaluate that kind of argument, the court must typically "engage in a counterfactual inquiry, asking whether the defendant's alleged conduct would 'have been a factual cause [of a concrete and particularized portion of the injury] if the other competing cause[s] had not been operating.'" *Id.* (alteration in original) (quoting Restatement (Third) of Torts: Liability for Physical & Emotional Harm § 27 cmt. a (Am. L. Inst. 2010)). And that kind of inquiry is impossible if "[t]he complaint does not describe [the plaintiff's] injury 'in terms specific enough

to indicate that it . . . result[ed] from' [the defendant's conduct] rather than from a 'multitude of other factors.'" *Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc.*, 958 F.3d 38, 49 (1st Cir. 2020) (citation omitted). Here, because Plaintiffs have failed to provide any information about the rates they paid, it is impossible to tell whether those rates resulted from loanDepot's alleged conduct or from any of the other factors that bear on loan pricing.

At bottom, Plaintiffs ask this Court to "turn the standing question on its head" by presuming that every alleged violation of the LO Comp Rule leads to an economic injury sufficient to confer Article III standing. *Johnson & Johnson*, 903 F.3d at 288. But "[i]t is well-settled law that '[federal courts] presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record.'" *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). Plaintiffs have failed to allege any facts that could rebut that presumption.

## II.   PLAINTIFFS' FAILURE TO ALLEGE FRAUD WITH PARTICULARITY REQUIRES DISMISSAL FOR TWO INDEPENDENT REASONS

Plaintiffs must satisfy Rule 9(b)'s heightened pleading standard for two independent reasons: (1) they are attempting to invoke the fraudulent concealment doctrine to toll the statute of limitations, Mot. at 18, and (2) their claim under the LO Comp Rule sounds in fraud, *id.* at 20-21. Their failure to do so thus provides two independent grounds to dismiss the complaint.

Plaintiffs incorrectly contend (Opp. at 14-18) that because fraud is not an element of the LO Comp Rule, they need not comply with Rule 9(b) to state a claim. As explained, Rule 9(b) applies to all claims that "sound in fraud." Mot. at 20-21 (citing *Bowman v. Select Portfolio Servicing, Inc.*, 704 F. Supp. 3d 633, 640-41 (D. Md. 2023)). Accordingly, claims that "are not fraud claims in and of themselves"—*i.e.*, claims for which fraud is not an element—are subject to Rule 9(b) when they "contain[] references to [a] 'scam' or 'scheme to defraud,'" or allege "acts of [defendants] that 'deceived.'" *Proctor v. Metro. Money Store Corp.*, 645 F. Supp. 2d 464, 476 n.3

-8-

(D. Md. 2009). And as Plaintiffs themselves put it, a key aspect of their claim is their allegation that loanDepot "implemented a four-part scheme to conceal its illegal efforts." Opp. at 5. Instead of explaining why that allegation does not sound in fraud, Plaintiffs cite (Opp. at 15-16) a host of cases in which courts have determined that TILA claims or consumer protection claims are not subject to Rule 9(b). But those cases simply stand for the unremarkable proposition that when a TILA claim is not accompanied by allegations that sound in fraud, Rule 9(b) does not apply. For instance, in *Maxwell v. Union Fid. Mortg., Inc.*, No. 08-cv-001329, 2009 WL 426189 (E.D. Cal. Feb. 19, 2009), the court concluded that the plaintiff's TILA claim was not subject to Rule 9(b) because he simply "alleged that the interest rate listed in the truth in lending disclosure statement was inaccurate," not that any fraud was involved. *Id.* at *5.

In any event, Plaintiffs acknowledge (Opp. at 24-25) that they must satisfy Rule 9(b) because they are relying on a fraudulent concealment theory to toll the statute of limitations. As the Fourth Circuit has explained, "[t]he normal pleading standards are heightened for allegations of fraudulent concealment." *Scharpf v. Gen. Dynamics Corp.*, 137 F.4th 188, 195 (4th Cir. 2025).

Plaintiffs err in arguing (Opp. at 25) that a weaker version of Rule 9(b) applies to their claims. Although the Fourth Circuit has suggested that there is "a 'relaxed Rule 9(b) standard' in 'cases involving alleged fraud by omission or concealment,'" it has applied that standard only in cases where the plaintiffs have alleged that there is no physical evidence of the fraud. *Id.* (citing *Corder v. Antero Res. Corp.*, 57 F.4th 384, 401-02 (4th Cir. 2023)). In *Scharpf*, for instance, the court applied that standard because the plaintiffs alleged that the key fraud involved a "non-ink-to-paper agreement" in which the "Defendants concealed th[eir] conspiracy by 'carefully avoiding' the creation of any documentation of its existence and by referring to it obliquely." 137 F.4th at 194-95. Similarly, in *Corder*, the court applied a relaxed standard because the plaintiff alleged that

-9-

the defendant had failed to prepare required reports that would have exposed their illegal conduct. 57 F.4th at 401-04. Here, by contrast, Plaintiffs allege that loanDepot took specific affirmative steps to conceal its alleged violation of the LO Comp Rule, including the "creation of fraudulent transfer forms" and the signing of fraudulent "closing documents." Opp. at 26.

Even when the Fourth Circuit has applied the relaxed standard, it has required plaintiffs to identify the specific individuals who committed the alleged acts of concealment and the dates on which they did so. In *Corder*, for instance, the court held that the plaintiffs did not satisfy Rule 9(b) because they "failed to identify a specific defendant" who had committed the alleged act of concealment. 57 F.4th at 403. "Even under a relaxed pleading standard," the court explained, the plaintiffs "had no excuse for neglecting to identify . . . which individual defendants" were responsible. *Id.* Thus, even if Plaintiffs were subject to the relaxed pleading standard, they would still be responsible for alleging "the fraud's 'who, what, when, where, and how.'" *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 195 (4th Cir. 2022) (citation omitted).

Plaintiffs barely dispute that they have not described any particular instances of the alleged acts of concealment and have not identified any of the individuals responsible for those acts. As Plaintiffs tell it, loanDepot's fraudulent concealment involved a "four-part scheme": (1) loan officers purported to transfer loans to ILCs "to lower the consumers' rate or fees"; (2) loan officers retained responsibility for transferred loans, thereby rendering them "sham transfers"; (3) loan officers prepared forms that provided false reasons for transfers; and (4) unidentified individuals "robosigned" federal loan documents with ILCs' names. *See* Opp. at 5-8. But as loanDepot has explained, the FAC does not allege any part of this scheme with the particularity that Rule 9(b) requires—it does not identify a single loan officer, describe the date or contents of a single "Sham Transfer," or provide any details about the individuals who allegedly falsified federal loan

documents. Mot. at 24-25. Plaintiffs do not dispute that characterization.

Instead, Plaintiffs erroneously contend that they have satisfied Rule 9(b) with high-level allegations about loanDepot's general practices. Specifically, Plaintiffs explain that they have identified "managers who told loan officers to fabricate specific forms," "provide[d] sworn testimony that the transfers were 'smoke and mirrors' and a 'three card monte,'" "cite[d] declarations of loan officers and processors confirming the fraudulent nature of these sham transfers," and "identifie[d] specific 'Permitted Transfer Forms' that were robosigned by ILCs." Opp. at 25-26. That explanation underscores why the FAC fails to satisfy Rule 9(b). Although Plaintiffs have indeed provided declarations and deposition transcripts that purport to describe loanDepot's practice of transferring loans to ILCs, even Plaintiffs do not contend that those documents "identify with some precision the date, place and time of active misrepresentations or the circumstances of active concealments." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007). Instead, as Plaintiffs describe them, those documents simply repeat Plaintiffs' generalized assertions that unidentified loan officers transferred loans under false pretenses at unspecified times and places. As loanDepot has explained, such allegations are insufficient. Mot. at 23-24.

Plaintiffs' reliance on *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535 (4th Cir. 2019), is misplaced. Plaintiffs contend (Opp. at 26) that *Edmonson* is a "virtual clone of this case" because the *Edmonson* plaintiffs "established a sufficient basis for fraudulent concealment premised on the defendant's use of sham entities, back dating of documents and omitting of information from closing documents." But in *Edmonson*—another RESPA case about alleged kickbacks paid to a mortgage lender by a title company—the "complaint[] allege[d] the names of the sham entities, the broker or loan officer connected to each sham entity, and the dates [the title company] allegedly funneled kickback payments through the entities." 922 F.3d at 553. For instance, the complaint

alleged that on "May 21, 2009," "Brandon Glickstein, [the title company's] lead marketing and account representative," formed a sham entity called "Competitive Advantage Media Group." Joint Appendix (Volume 1) at 13-15, *Edmonson v. Eagle Nat'l Bank*, No. 18-1216 (4th Cir. May 16, 2018), ECF No. 29-1. And it described in detail how the title company made $1,000 payments to that sham entity after the kickbacks. *Id.* Plaintiffs do not come close to that level of detail.

Accordingly, because Plaintiffs' claim "sounds in fraud," the FAC must be dismissed because Plaintiffs fail to allege fraud with particularity. At minimum, that failure dooms Plaintiffs' reliance on the fraudulent concealment doctrine and requires dismissal of the FAC as untimely.[2]

### III. EVEN UNDER THE PLAUSIBILITY PLEADING STANDARD, PLAINTIFFS HAVE FAILED TO STATE A VIOLATION OF THE LO COMP RULE

Plaintiffs do not cite a single case in which a court has deemed allegations like theirs sufficient to state a violation of the LO Comp Rule. Instead, they lean on the CFPB for help, citing three complaints and a consent decree—all of which are more than a decade old and rest on entirely different facts and allegations—and asserting that the CFPB has "found that the mere relationship between the compensation received by loan officers and the terms of loans closed by their customers is sufficient to establish an actionable violation." Opp. at 11-12. According to Plaintiffs, the FAC establishes such a relationship.

That argument is flawed in multiple ways. To start, it incorrectly suggests that a claim under the LO Comp Rule can survive a motion to dismiss so long as the complaint includes a

---

[2] In opposing loanDepot's motion to disqualify Plaintiffs' counsel, Plaintiffs undermine their theory of fraudulent concealment. As loanDepot has explained, Plaintiffs' counsel has a conflict of interest because this action exposes their former clients—former loanDepot loan officers—to liability under the LO Comp Rule. ECF No. 35-1 at 10-11. In response, Plaintiffs argue that the risk of liability to their counsel's former clients is low because "the expiration of the statute of limitations forecloses civil liability" and "there would need to be an additional finding that the Former Clients personally and individually engaged in fraudulent concealment." ECF No. 41 at 16. But Plaintiffs' theory of fraudulent concealment is that loanDepot carried out a scheme in which loan officers were responsible for almost all of the alleged acts of concealment. *See supra* at 10. loanDepot disputes those allegations. To establish fraudulent concealment under their theory, however, Plaintiffs must show that (at least some) loan officers did violate the LO Comp Rule. Their recent filing is an admission that they do not plan to do so.

-12-

conclusory assertion that loan officer compensation has a "relationship" with loan terms. *Id.* But a plaintiff must "plead[] . . . facts painting a 'plausible' picture of liability." *Bowman*, 704 F. Supp. 3d at 640 (citation omitted). In the context of the LO Comp Rule, that means Plaintiffs must plead facts that establish a relationship between compensation and loan terms—at the very least, they must identify the specific terms that triggered an increase or decrease in compensation or plausibly describe how loanDepot decided to increase or decrease compensation. *See* Mot. at 28.

To the extent Plaintiffs are arguing that the facts of this case are analogous to those described in the decade-old CFPB complaints and consent decree, those documents have no precedential value (especially because the CFPB has indicated it may rescind the LO Comp rule entirely). Even before *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), courts did not give deference to "agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988). Although the CFPB has promulgated a regulation implementing the LO Comp Rule, that regulation does not explain what kinds of facts are sufficient to establish a violation of that rule. Thus, even if it were appropriate for this Court to defer to the CFPB's interpretation of the LO Comp Rule, its factual allegations in cases that never reached final judgment would receive no deference.

Regardless, the CFPB documents only underscore that the FAC lacks a key element necessary to state a violation of the LO Comp Rule: an explanation of how the defendant determined compensation. For instance, in one case, the CFPB alleged that the defendant violated the LO Comp Rule by paying higher bonuses to loan officers who generated loans that qualified for cash rebates (high-interest loans) and retained the rebates instead of passing them on to customers. *See* Complaint ¶¶ 16-18, 23, *CFPB v. Franklin Loan Corp.*, No. 14-cv-2324 (C.D. Cal. Nov. 13, 2014), ECF No. 1. The CFPB explained that the defendant would "track the origination

fees and retained rebate generated from each loan," "set aside 65-70% of that amount" for the loan officer's individual "expense account," and pay the loan officer "50% to 60% of the amount in the individual 'expense account' . . . as a bonus." *Id.* ¶¶ 23-26. In other words, the CFPB specifically explained how the defendant would determine the compensation of loan officers. The other complaints Plaintiffs cite are practically identical. *See* Complaint ¶¶ 20-27, *CFPB v. Castle & Cooke Mortg., LLC*, No. 13-cv-684 (D. Utah July 23, 2013), ECF No. 2; Complaint ¶¶ 24-29, *CFPB v. RPM Mortg., Inc.*, No. 15-cv-2475 (N.D. Cal. June 4, 2015), ECF No. 1.

The FAC contains no such allegations. Instead, it simply asserts that loan officers were paid less if they did not secure "higher rates" or "inflated rates." *See* Mot. at 28 (citing FAC ¶¶ 23, 28). The FAC does not attempt to explain what those rates were or provide any other information about how loanDepot determined that a rate was not high enough. That lack of detail highlights a key difference between Plaintiffs' claim and the CFPB's claims—Plaintiffs' claim is not that loanDepot determines compensation by plugging the fees or interest rates loan officers secured into a formula. Instead, Plaintiffs' claim is that when the interest rate for a particular loan is too low, loanDepot decreases the loan officer's compensation for that loan. But Plaintiffs do not attempt to explain how loanDepot makes such decisions. Without more, their claim is implausible.

In an attempt to establish a relationship between compensation and loan terms, Plaintiffs point (Opp. at 12-13) to three documents, all involving one former loanDepot Executive Vice President ("EVP"): (1) an email from the EVP requesting that a loan officer transfer a loan to an ILC "prior to doing the PE request and locking the loans," ECF No. 29-9; (2) deposition testimony from loanDepot's "corporate designee" stating that per the EVP's direction, an ILC had to be identified before a loan could be transferred, ECF No. 29-3; and (3) screenshots that show instances in which the EVP reduced the rates of a loan that was with an ILC, ECF Nos. 29-4, 29-

-14-

5, and 29-6. As loanDepot has explained, none of those documents supports Plaintiffs' claims—they simply show that on a handful of occasions, customers whose loans were originated by ILCs received lower rates. Mot. at 26-27. They do not show that loanDepot transferred the loans to ILCs *for the purpose* of decreasing the original loan officers' compensation. *See id.*

Even if those documents did show that the EVP transferred loans for the purpose of decreasing loan officer compensation, they do not come close to "painting a 'plausible' picture of" a *nationwide* compensation policy. *Bowman*, 704 F. Supp. 3d at 640. Plaintiffs do not allege that the EVP had authority over their loan officers, let alone all loan officers at the company. And they do not explain how the EVP's statements could have been conveyed to loan officers nationwide.

Moreover, because Plaintiffs are relying on a "proxy for a term of a transaction" to establish a violation of the LO Comp Rule, they must show that a significant percentage of transferred loans have lower interest rates. Mot. at 28-29; *see* 12 C.F.R. § 1026.36(d)(1)(i) ("A factor that is not itself a term of a transaction is a proxy for a term of the transaction if the factor *consistently varies with that term over a significant number of transactions*." (emphasis added)). Again, Plaintiffs do not explain how a handful of occurrences involving a single manager satisfy that standard.

## IV.   IT IS UNDISPUTED THAT DISMISSAL SHOULD BE WITH PREJUDICE

There is no indication that Plaintiffs will be able to fix the multiple glaring problems with the FAC. *See* Mot. at 29-30. Indeed, the FAC "alleges the same basic scheme as their original complaint, and therefore fails to remedy the fundamental problems" that loanDepot has twice identified. *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 113 (4th Cir. 2025). On that point, Plaintiffs have no response. Accordingly, any dismissal should be with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the FAC with prejudice.

| | |
|---|---|
| Dated: December 19, 2025 | Respectfully submitted,<br><br>COOLEY LLP<br><br>By: */s/ David E. Mills*<br>David E. Mills (Bar No. 16654)<br>Michelle L. Rogers (*pro hac vice*)<br>Raymond P. Tolentino (*pro hac vice*)<br>Elias S. Kim (*pro hac vice*)<br>1299 Pennsylvania Avenue NW<br>Suite 700<br>Washington, DC 20004-2400<br>Telephone: +1 202 842 7800<br>Facsimile: +1 202 842 7899<br>dmills@cooley.com<br>mrogers@cooley.com<br>rtolentino@cooley.com<br>ekim@cooley.com<br><br>Miranda Li (*pro hac vice*)<br>3 Embarcadero Center<br>20th Floor<br>San Francisco, CA 94111-4004<br>Telephone: +1 415 693 2000<br>Facsimile: +1 415 693 2222<br>mjli@cooley.com<br><br>*Attorneys for Defendant loanDepot.com, LLC* |