# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

NATHAN JOHNSON, RACHEL DeBAUN, NATHAN MOORE, and SHAWN DERRICK, on behalf of themselves as well as a Class of all similarly situated persons,

        Plaintiffs,

  v.

LOANDEPOT.COM, LLC,

        Defendant.

Civil Action No. 1:25-CV-02294-JRR

**DEFENDANT LOANDEPOT.COM, LLC'S REPLY
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISQUALIFY COUNSEL**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| ARGUMENT | | 2 |
| I. | Mr. Karen Has a Conflict of Interest | 2 |
| | A. Plaintiffs Cannot Prove that loanDepot Violated the LO Comp Rule Without Exposing Mr. Karen's Former Clients to Liability | 2 |
| | B. Plaintiffs' Other Arguments Regarding the Application of Rule 19-301.7(a) and Rule 19-301.9(a) Lack Merit | 6 |
| II. | There Is No Support for Plaintiffs' Argument that the Motion to Disqualify Is Merely Strategic or Otherwise Improper | 10 |
| | A. The Motion Is Timely | 11 |
| | B. loanDepot Filed This Motion to Protect the Integrity of the Court Proceedings and to Ensure that It Will Not Face Duplicative Claims | 13 |
| | C. loanDepot Is the Right Party to Raise These Issues | 14 |
| CONCLUSION | | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Balt. Cnty. v. Barnhart*,
  No. 03-cv-09-660, 2010 WL 6823921 (Md. Cir. Ct. Apr. 21, 2010) ......................................11

*Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*,
  No. 18-cv-151, 2020 WL 4700975 (D.S.C. Aug. 13, 2020).......................................13

*Buckley v. Airshield Corp.*,
  908 F. Supp. 299 (D. Md. 1995) ..........................................................................13

*Costley v. Bank of Am., N.A.*,
  No. 13-cv-2488, 2017 WL 5564641 (D. Md. Nov. 20, 2017) ....................................12

*CytImmune Scis., Inc. v. Paciotti*,
  No. 16-cv-1010, 2017 WL 57213 (D. Md. Jan. 5, 2017)...........................................3

*Elonis v. United States*,
  575 U.S. 723 (2015)..................................................................................................5

*Fitch v. St. Paul's Sch. for Girls*,
  No. 24-cv-938, 2025 WL 1346605 (D. Md. May 8, 2025).........................................10

*Gross v. SES Americom, Inc.*,
  307 F. Supp. 2d 719 (D. Md. 2004)...........................................................................13

*Hendley v. Cameron-Brown Co.*,
  840 F.2d 831 (11th Cir. 1988) ....................................................................................6

*Kevlik v. Goldstein*,
  724 F.2d 844 (1st Cir. 1984).....................................................................................15

*Livingston v. Copart of Conn., Inc.*,
  No. 17-cv-2543, 2020 WL 8167503 (D.S.C. Sept. 2, 2020) .....................................13

*Scott v. Lori*,
  No. 19-cv-2014, 2020 WL 906351 (D. Md. Feb. 24, 2020).......................................10

*Smith v. Levine Leichtman Cap. Partners, Inc.*,
  No. 10-cv-10, 2011 WL 13153123 (N.D. Cal. Mar. 9, 2011) ....................................14

*SVB Fin. Grp. v. Fed. Ins. Co.*,
  No. 23-cv-95, 2024 WL 844840 (E.D.N.C. Feb. 28, 2024) .......................................13

*United States v. Clarkson*,
    567 F.2d 270 (4th Cir. 1977) ...................................................................................13, 14, 15

*United States v. Perry*,
    30 F. Supp. 3d 514 (E.D. Va. 2014) ....................................................................................13

**Statutes, Rules & Other Authorities**

15 U.S.C.

    § 1639b ..................................................................................................................................12
    § 1640 ...............................................................................................................................6, 12

Maryland Attorneys' Rules of Professional Conduct
    Rule 19-301.7 ................................................................................................................ *passim*
    Rule 19-301.9 .................................................................................................................2, 6, 8

Restatement (Third) of Torts: Apportionment Liab. § 15 (2000) ........................................................7

## INTRODUCTION

Mr. Karen's conflict of interest is apparent on the face of the complaint. The complaint alleges that loanDepot's loan officers received compensation based on the terms of loans they originated under a "fraudulent scheme" to charge certain borrowers less money, and others more. In an attempt to support these (baseless) allegations, the complaint references documents from prior cases in which Mr. Karen unsuccessfully represented former loanDepot loan officers—the same people he now accuses of misconduct, including the loan officer for Plaintiffs. Mr. Karen's conflict is plain: As counsel to Plaintiffs, he asserts claims that directly implicate his former clients.

The opposition does not dispute that Plaintiffs' claims implicate Mr. Karen's former clients, and Mr. Karen has repeatedly refused to say whether his current and former clients have waived the conflict this representation clearly poses. He also does not explain how future members of a purported class could possibly waive such conflicts. Instead, the opposition simply asserts that no conflict exists because it would be difficult to hold Mr. Karen's former clients liable. This argument is meritless. An ethical conflict based on raising claims against former clients remains even if the former clients might be able to mount defenses in a civil, criminal, or regulatory proceeding. It is indisputable that Plaintiffs' legal theory requires them to prove facts that would expose loan officers like their loan officer, Sean Johnson, to a risk of liability.

Unable to respond on the merits, Mr. Karen resorts to intimidation. Mr. Karen has repeatedly threatened to seek sanctions unless loanDepot withdraws its disqualification motion. According to the opposition, loanDepot's motion is "strategic" and "improper," despite the substantial legal and factual support for disqualification, and despite loanDepot's repeated efforts to resolve the issues with Mr. Karen directly before filing any motion. There is nothing strategic or improper in loanDepot's good faith motion seeking to ensure the integrity and fairness of these proceedings. The Court should grant loanDepot's motion and disqualify Mr. Karen and his firm.

# ARGUMENT

## I. MR. KAREN HAS A CONFLICT OF INTEREST

Under the Maryland Attorneys' Rules of Professional Conduct, Mr. Karen has a conflict of interest because there is a "significant risk" that his prior representation of Sean Johnson and other former loanDepot loan officers "materially limit[s]" his representation of Plaintiffs, Rule 19-301.7(a), and because the interests of his former clients and Plaintiffs are "materially adverse," Rule 19-301.9(a). The reason is simple: Plaintiffs cannot win this lawsuit without exposing Mr. Johnson and other former loanDepot loan officers to a significant risk of liability under the LO Comp Rule.[1] In attempting to address that conflict, the opposition walks back several key aspects of Plaintiffs' TILA allegations, which alone demonstrates that Mr. Karen's conflict is real, and has already materially limited his representation of Plaintiffs.

### A. Plaintiffs Cannot Prove that loanDepot Violated the LO Comp Rule Without Exposing Mr. Karen's Former Clients to Liability

Plaintiffs' LO Comp Rule claim requires them to prove, among other things, that Mr. Johnson—the loan officer who originated their loans—transferred *other* customers' loans to lower cost originators to offer them lower prices, while offering Plaintiffs higher prices, and that he ultimately received compensation based on the terms of those transactions. Mot. at 9-10. And because Plaintiffs seek to represent a nationwide class of borrowers, they will also need to show that Mr. Karen's other former clients took the same actions, and were compensated the same way. *Id.* Plaintiffs' entire case's theory rests on the actions of loan officers like Mr. Karen's former clients and how they allegedly priced and transferred loans. As a result, Mr. Karen cannot faithfully represent Plaintiffs without implicating his former clients by showing they engaged in the exact conduct Plaintiffs allege is prohibited by the LO Comp Rule. *Id.*

---

[1] Unless noted otherwise, loanDepot adopts all abbreviations used in its opening brief. *See* ECF No. 35-1 ("Mot.").

Plaintiffs do not dispute any of this. Nor do they dispute that if Mr. Karen's former clients violated the LO Comp Rule, they could be subject to liability. Instead, they contend that Mr. Karen does not have a conflict because it would be difficult for a hypothetical plaintiff or regulator to prove additional facts necessary to establish liability. ECF No. 41 at 16-19 ("Opp."). But Plaintiffs offer no support for the position that a conflict exists only if liability for a former client is guaranteed. On the contrary, Rule 19-301.7(a) provides that a conflict exists when there is a "significant risk" of a "materially limited" representation. That standard is satisfied where, as here, an attorney knows that zealously representing his current clients (customers allegedly overcharged by loan officers) will increase the likelihood of adverse consequences for his former clients (the loan officers who allegedly overcharged those customers), even if additional steps must occur before those former clients face liability. Mot. at 10-12. Mr. Karen's "conspicuous[] avoid[ance]" of certain arguments—e.g., his decision not to name Mr. Johnson in the complaint or explain how he allegedly pushed Plaintiffs to accept higher rates—demonstrates that his obligations to his former clients have already constrained his representation of Plaintiffs. *Id.* at 12 (citing *CytImmune Scis., Inc. v. Paciotti*, No. 16-cv-1010, 2017 WL 57213, at *6 (D. Md. Jan. 5, 2017)).

Plaintiffs' arguments that it would be difficult to establish liability against Mr. Karen's former clients also directly contradict their other filings in this case and thus demonstrate why it is untenable for Mr. Karen to continue as their attorney. On civil liability, Plaintiffs now assert that "the expiration of the statute of limitations forecloses civil liability against the Former Clients." Opp. at 16. loanDepot agrees that Plaintiffs' claims are expired. *See* ECF No. 32-1 at 15-18. However, Plaintiffs have elsewhere vigorously argued that the limitations period should be tolled because loanDepot *and its loan officers* fraudulently concealed any violation of the LO Comp Rule. FAC ¶¶ 47-65; ECF No. 38 at 5-8.

Now, in an ill-conceived effort to save Mr. Karen from disqualification, Plaintiffs argue that it would be difficult to show that Mr. Karen's former clients "personally and individually engaged in fraudulent concealment" and insist that they are only trying to show that "Defendant's executives" concealed loanDepot's purported violation. Opp. at 16-17. But as Plaintiffs have elsewhere explained, their theory is that "*all* loan officers in the retail division nationwide" participated in a "four-part scheme" to conceal that they were being compensated in violation of the LO Comp Rule. ECF No. 38 at 5-8 (emphasis added). Plaintiffs claim they can prove a nationwide violation, but, at minimum, they must show that Mr. Johnson—their primary contact at loanDepot and the individual who priced their loans—inflated the price of their loans to increase his compensation. Plaintiffs cannot retreat from these arguments now, and their attempt to do so only highlights that Mr. Karen should not be representing them.

Mr. Karen summarily asserts that his former clients need not worry about civil liability because this case involves "class litigation," whereas claims against individual officers "would involve wholly different—and potentially far more challenging litigation." Opp. at 17. Plaintiffs make no serious effort to explain that illogical statement. *Id.* at 17 n.10. Litigating a nationwide class poses challenging factual and legal issues—such as presenting proof of a nationwide practice or establishing a method to determine which members of a purported class have standing—not presented by individualized suits. In any case, a class has not been certified, and there will be substantial obstacles to certification, especially because Mr. Karen's conflicts make him ill-suited to serve as class counsel. Mot. at 15-16. It is also illogical to argue that the potential for class certification somehow absolves Mr. Karen of a conflict while simultaneously arguing (Opp. at 28 n.20) that it is too early to consider whether Mr. Karen's conflict affects his ability to serve as class counsel. In any event, borrowers have regularly brought civil claims against individual loan

officers, Mot. at 10 (citing cases), showing that this conflict is not merely theoretical.

Plaintiffs' arguments as to potential criminal liability are equally flawed. According to Plaintiffs, the possibility that their claims could lead to an increased risk of criminal penalties for Mr. Karen's former clients will not limit Mr. Karen's representation or create adverse interests because it would be difficult to "pro[ve] beyond a reasonable doubt" that the former clients "knowing[ly] and willful[ly]" violated the LO Comp Rule. Opp. at 18; *id.* at 19 (loan officers lacked knowledge because loanDepot allegedly "concealed [its] misconduct from everyone"). To be sure, it would be difficult to establish criminal (or any) liability, especially given the weakness of Plaintiffs' case. But the difficulty of proving a criminal violation does not give a lawyer free rein to take positions that increase the risk his former clients will face liability. Plaintiffs also ignore that their own pleadings and arguments assert that Mr. Johnson and other loan officers knew they were being compensated based on the terms of loans and were incentivized to push for higher interest rates. ECF No. 38 at 6-8.[2] They allege that individual loan officers were central to the alleged scheme, e.g., FAC ¶¶ 5, 32, 48, 50-51, and that former employees raised issues about these practices while they worked at loanDepot, FAC ¶¶ 34-39. Plaintiffs cannot have it both ways.

Plaintiffs also err in contending (Opp. at 18) that Mr. Karen's former clients are immune from liability because they were allegedly just following the orders of loanDepot executives. To the extent Plaintiffs' argument is that Mr. Johnson and the other former clients knew they were being compensated based on the terms of loans but did not know the practice was illegal, a defendant typically cannot avoid liability based on "ignorance of the law." *Elonis v. United States*, 575 U.S. 723, 735 (2015). Regardless, Plaintiffs repeatedly state that Mr. Karen's former clients

---

[2] In fact, Plaintiffs' argument that loanDepot "executives intentionally concealed Defendant's illegal practices from everyone, including its loan officers" directly contradicts their statement that Mr. Karen's former clients "testified repeatedly as to their knowledge of, and experiences with, Defendant's illegal compensation practices"—in a case they lost. Opp. at 1-2.

(incorrectly) believed that loanDepot's conduct *was* illegal and engaged in that allegedly wrongful conduct despite this belief. *See* Opp. at 1-2, 4, 9, 19.[3]

> **B.  Plaintiffs' Other Arguments Regarding the Application of Rule 19-301.7(a) and Rule 19-301.9(a) Lack Merit**

Many of Plaintiffs' remaining arguments rest on the mistaken notion that they are aligned with Mr. Karen's former clients. Specifically, they assert that "[t]he Former Clients made their choices years ago when they repeatedly accused Defendant of LOC Rules violations both in pleadings and under oath." Opp. at 9. Based on that assertion, Plaintiffs argue that Mr. Karen's representation will not be "materially limited" under Rule 19-301.7(a). *Id.* at 19-20 ("Lead Counsel's focus on establishing Defendant's exclusive liability in no way harms the Former Clients—if anything, it benefits them."). Invoking that same flawed logic, Plaintiffs maintain that the interests of Mr. Karen's current and former clients are not "materially adverse." *Id.* at 23-25.

loanDepot's arbitration action against Mr. Johnson illustrates why Plaintiffs and Mr. Karen's former clients do not share the same interests. In that action, Mr. Johnson asserted a counterclaim alleging that loanDepot breached his compensation agreement and, in doing so, directed him to engage in conduct that violated the LO Comp Rule. *See* ECF No. 35-3 at 19. The arbitrator rejected the counterclaim, explaining that if Mr. Johnson's allegations were true, he had *also* violated the LO Comp Rule and thus was "owed no commission." *Id.* at 23. Thus, Mr. Johnson's previous accusation does not mean his interests are aligned with those of the borrowers

---

[3] Relatedly, Plaintiffs cannot invoke TILA's good faith defense to argue that claims would not "be brought against loan officers for following company rules." Opp. at 16 n.9. That defense is limited to acts done in "good faith in conformity with any rule, regulation, or interpretation thereof by the [Consumer Financial Protection] Bureau or in conformity with any interpretation or approval by an official or employee of the Federal Reserve System." 15 U.S.C. § 1640(f). It does not, however, "protect a creditor who fails to conform with a regulation or interpretation through an honest, good faith mistake." *Hendley v. Cameron-Brown Co.*, 840 F.2d 831, 834 (11th Cir. 1988) (citations omitted). Even accepting Plaintiffs' theory that the loan officers were merely following company policy, not agency rules or regulations, the safe harbor would not apply.

whose loans he originated.[4]

Apart from their adversity toward loanDepot, Plaintiffs fail to explain how Mr. Karen's former clients (individuals who allegedly executed a fraudulent scheme to harm Plaintiffs) share their interests. Mot. at 13-14. Based on the FAC's own allegations, loan officers were required to refer borrowers to lower cost originators where they could not sell those borrowers higher rates, meaning they were paid less (i.e., borrowers would benefit at the expense of loan officers). FAC ¶¶ 2, 43, 45, 68. Given these allegations, their interests cannot be "wholly aligned." Opp. at 1.

Plaintiffs' opposition scarcely addresses loanDepot's argument that Mr. Karen's duties to his former clients have already "materially limited" his representation of Plaintiffs under Rule 19-301.7(a). Mot. at 9-12. For instance, Plaintiffs cannot establish standing unless they allege (among other things) that Mr. Johnson—the loan officer responsible for originating their loans—pushed them to accept higher interest rates. *Id.* at 4-5, 12. Plaintiffs have failed to do that, and they have provided zero details regarding Mr. Johnson's or the other former clients' participation in the alleged fraudulent scheme. *Id.* at 11-12. Instead of explaining why such allegations are unnecessary, Plaintiffs' opposition is silent on this point.

Plaintiffs' opposition shows that Mr. Karen has already gone out of his way—and may continue to go out of his way—to avoid implicating his former clients. For instance, instead of arguing that Plaintiffs' claims will not affect Mr. Karen's former clients, the opposition asserts that Plaintiffs' theory of the case will be "benefi[cial]" to those former clients, Opp. at 20, and that "Plaintiffs are merely carrying the torch lit by the Former Clients," *id.* at 24. And in response to

---

[4] Aside from the obvious differences in the actions and allegations, it bears noting that plaintiffs in civil litigation frequently bring claims against multiple defendants alleging that they are jointly responsible for the plaintiffs' injuries. *See* Restatement (Third) of Torts: Apportionment Liab. § 15 (2000). In those cases, the defendants often seek to apportion liability by arguing that one was more culpable than the other. *Id.* But their adversity to each other does not mean that any of them are aligned with the plaintiffs. Even if one defendant views the others as more culpable, that does not mean that such defendant wants the plaintiffs to prove their claim.

loanDepot's argument that Mr. Karen will potentially need to cross-examine his former clients when loanDepot calls them as witnesses, Plaintiffs insist that "there would be no reason to suggest that Lead Counsel would ever need to cross examine his Former Clients given their extensive prior testimony supportive of Plaintiffs' claims." *Id.* at 24 n.15. These statements underscore that Mr. Karen is likely litigating this case in a way that protects his former clients at Plaintiffs' expense. Mot. at 9-12. Rule 19-301.7(a) does not allow that.

Thus, Plaintiffs' heavy reliance on the "actual or likely conflict" standard is misplaced. Opp. at 14-15. Mr. Karen's litigation decisions demonstrate that such a conflict already exists and that there is no need for this Court to engage in speculation.

Plaintiffs do not meaningfully dispute that the proceedings involving Mr. Karen's former clients are "substantially related" to this matter under Rule 19-301.9(a). Opp. at 21-23. Instead, they argue that, because the former clients "submitted the LOC Rules Violations as part of their narrative" in arbitration counterclaims against loanDepot, "not [as] an aspect of the required proof," the claims are distinct. *Id.* at 21 n.13. But that is not the relevant inquiry.[5] Matters are "substantially related" under Rule 19-301.9 when they share a factual predicate. Plaintiffs do not refute that the counterclaims in the Johnson Arbitration and the allegations in this case "involve the same transaction or legal dispute." Mot. at 12 (quoting Rule 19-301.9 cmt. 3).

Plaintiffs also attempt to evade loanDepot's argument that the matters are substantially related because Mr. Karen has used confidential information he obtained in those matters to bring this case. They do not deny that matters are "substantially related" when they present "a substantial risk that confidential factual information" obtained in a prior representation "would materially

---

[5] Neither is whether loanDepot previously (and correctly) pointed out that Mr. Johnson's allegations about the LO Comp Rule had "no bearing on the merits of the actual legal claims he has asserted" in the prior cases—namely, breach of contract and violation of the Virginia Wage Payment Act. ECF No. 41-3 at 1-2.

advance" the current client's position. *Id.* Instead, Plaintiffs contend that there is no confidential information at issue in this case because information about loanDepot's corporate policies was made public in the previous cases. Opp. at 22-23. But that mischaracterizes loanDepot's argument, which is that Mr. Karen likely used stolen customer and proprietary information—which he obtained through representing Mr. Johnson and other former loan officers—to identify potential plaintiffs and bring this suit. Mot. at 7, 13.[6] There is no suggestion that such material is publicly available.

Plaintiffs' boldest argument is that the Court should just trust Mr. Karen's assertion that there is no conflict. Specifically, they claim that even if loanDepot were to call Mr. Karen's former clients as witnesses at trial, Mr. Karen would not cross-examine them. Opp. at 24 n.15. Plaintiffs insist that they "have no reason or intention of pursuing" liability against Mr. Karen's former clients. *Id.* at 25. Until those claims are memorialized in a binding agreement, however, they are meaningless.[7] In any event, Plaintiffs do not have the ability to bind other potential members of the class whose interests are directly at issue, let alone regulators or other borrowers.

Along the same lines, Mr. Karen represents that he can resolve any conflict with *ex parte* submissions—"including the existence of any waivers"—that demonstrate the "precaution" he has taken "to ensure compliance with Rule 1.9."[8] *Id.* at 25-26. But a future promise of undefined *ex parte* materials is plainly insufficient for this Court to conclude that no conflict exists.[9] Indeed,

---

[6] Plaintiffs state that this material is in "Defendant's possession," but do not otherwise explain how loanDepot's confidential information is supposedly public. Opp. at 23.

[7] That said, the fact that Plaintiffs are taking this position demonstrates the harm to Plaintiffs (as well as future class members, if any) caused by Mr. Karen's conflict, as any non-conflicted lawyer representing Plaintiffs would want to cross-examine Mr. Johnson (and potentially other loan officers allegedly implicated in the purported scheme).

[8] Plaintiffs' position that the disclosure of "the existence of a waiver" would implicate privilege is unsupported by any authority. Opp. at 25-26. At any rate, loanDepot is not attempting to pierce the attorney-client privilege.

[9] Even if Mr. Karen has obtained waivers, the conflicts identified above are likely too serious for any such purported waivers to be valid. *See* Mot. at 14-15 (citing authorities). These issues are only exacerbated because this case was

this kind of vague, undefined promise is typical of Mr. Karen's approach to his conflicts of interest. Before filing the motion, loanDepot gave Mr. Karen ample opportunity to address and resolve its concerns.[10] Instead of doing so, he simply asserted that there was no conflict and that he would be unable to confirm or deny whether his former clients had provided waivers. Then, as now, he declared without any support that the existence of such waivers is protected by attorney-client privilege.[11] In other words, Mr. Karen has had multiple opportunities to resolve this issue without the Court's intervention—and he has rejected every single one.

## II. THERE IS NO SUPPORT FOR PLAINTIFFS' ARGUMENT THAT THE MOTION TO DISQUALIFY IS MERELY STRATEGIC OR OTHERWISE IMPROPER

Plaintiffs' opposition is Mr. Karen's third attempt to intimidate loanDepot into staying silent about his ethical violations. Before filing the motion to disqualify, loanDepot contacted Mr. Karen twice abouts its concerns; both times, Mr. Karen stated that if loanDepot filed a motion to disqualify, he would seek sanctions. Now that loanDepot has filed the motion to disqualify, Mr. Karen has once again threatened to move for sanctions. Opp. at 6-7. Mischaracterizing loanDepot's motion as merely "strategic" and "tactical" (without a shred of evidence to support his reckless accusations), Mr. Karen states that if loanDepot does not "withdraw this motion," "Plaintiffs reserve the right to file a separate motion for sanctions." Opp. at 6-7 & n.3.[12]

---

brought as a class action, as it is unlikely that Mr. Karen will ever be able to obtain written, informed consent from the entire putative class. *Id.*

[10] loanDepot stands ready to provide all of the parties' communications at the Court's direction.

[11] Mr. Karen claims that an ethics counsel independently concluded that his representation of Plaintiffs did not present a conflict. Opp. at 3, 6, 25-26. But Mr. Karen has refused to provide loanDepot with a copy of his ethics counsel's opinion or clarify his ethics counsel's reasoning or the facts on which his counsel's opinion is based. Mot. at 7.

[12] Remarkably, Mr. Karen threatened sanctions a *fourth* time in response to defense counsel's request for a courtesy extension of time to file this reply brief. Plaintiffs and Mr. Karen have no grounds to move for sanctions. loanDepot attempted to engage with Mr. Karen in good faith to understand whether there was an explanation for the conflicts that appear on the face of Plaintiffs' complaint. Only after Mr. Karen responded with obstruction and threats did loanDepot decide to file the motion. Even then, loanDepot filed it only after a thorough examination of the law and facts. Accordingly, any sanctions motion filed by Plaintiffs would be frivolous, improper, and itself be grounds for potential sanctions. *Fitch v. St. Paul's Sch. for Girls*, No. 24-cv-938, 2025 WL 1346605, at *4 (D. Md. May 8, 2025) ("Indeed, the filing of a frivolous motion for sanctions is itself sanctionable conduct."); *Scott v. Lori*, No. 19-cv-2014,

Behind the bravado, however, there is no substance. Plaintiffs advance three reasons that loanDepot's motion is supposedly nothing more than a "strategic" maneuver: (1) the motion is untimely because loanDepot did not object to Mr. Karen's previous representations; (2) loanDepot has not explained why it cares about the conflict; and (3) loanDepot does not have standing to raise the conflict. Each argument reflects a profound misunderstanding of the facts and law.

### A. The Motion Is Timely

Plaintiffs contend that loanDepot's motion is "strategic" because loanDepot did not move to disqualify Mr. Karen when he represented Mr. Johnson and other former loan officers in the Movement Action and arbitration actions against loanDepot. Opp. at 4, 11-13. According to Plaintiffs, loanDepot waived any objection to Mr. Karen's representation in *this* case because it did not seek disqualification in those prior actions.

But loanDepot did not have grounds to move to disqualify Mr. Karen in those prior actions; no conflict existed at that time.[13] Mr. Karen was not then representing a party who was asserting a claim that could subject former clients to liability. In the arbitrations, Mr. Karen was defending former loanDepot loan officers against loanDepot's breach of contract claims. *See* Mot. at 2-3. Although Mr. Karen asserted counterclaims, they were aimed at enforcing his clients' compensation agreements with loanDepot. ECF No. 35-3 at 19. Plaintiffs fail to explain how those counterclaims could have exposed Mr. Karen's clients to liability. And in the Movement Action, Mr. Karen was defending Movement against loanDepot's trade secret and unfair competition

---

2020 WL 906351, at *2 (D. Md. Feb. 24, 2020) (holding that a sanctions "motion is appropriate only in instances of egregious misconduct" and that "the filing of a frivolous motion for sanctions is itself sanctionable conduct").

[13] For this reason, *Baltimore County v. Barnhart* is not "instructive," as Plaintiffs claim. Opp. at 12 (citing No. 03-cv-09-660, 2010 WL 6823921 (Md. Cir. Ct. Apr. 21, 2010)). In *Barnhart*, counsel represented two former employees in separate actions against the same defendant employer. *Id.* That attorney previously represented the employer. *Id.* The employer did not move to disqualify the attorney until six days before a merits hearing in the second plaintiff's action, long after the employer had become aware of the conflict in the first plaintiff's action, which the employer lost. *Id.*

claims. *Movement Action*, ECF No. 1 ¶¶ 90-150. Movement asserted one counterclaim alleging that loanDepot tortiously interfered with prospective business relations by initiating legal proceedings against its former loan officers when they left to join Movement. Countercl. ¶¶ 19-27, *Movement Action*, ECF No. 5. Again, Plaintiffs fail to explain how this counterclaim could have exposed Mr. Karen's former clients to liability.

To the extent Plaintiffs are arguing that Mr. Karen's former clients could have raised claims under the LO Comp Rule against loanDepot in those actions—thereby exposing his former clients to liability—that argument is factually and legally wrong. Mr. Karen and his clients *did not* raise such claims in those actions. Nor could they have. TILA's private right of action allows *borrowers* to bring claims against mortgage lenders that violate the LO Comp Rule. *See* 15 U.S.C. § 1640; *id.* § 1639b; *Costley v. Bank of Am., N.A.*, No. 13-cv-2488, 2017 WL 5564641, at *4 (D. Md. Nov. 20, 2017) ("TILA confers a statutory 'right of action only on a borrower in a suit against a borrower's creditor.'") (citations omitted). Thus, there would have been no way for Mr. Johnson, Movement, or other former loan officers to bring such a claim against loanDepot in those cases. Although Mr. Johnson asserted in arbitration that loanDepot forced him to engage in acts violating the LO Comp Rule, he only sought to enforce his compensation agreement. ECF No. 35-3 at 19.

Before this case, Mr. Karen had not raised claims against loanDepot that could have resulted in liability for Mr. Karen's other clients. Moreover, this case is the first in which Mr. Karen (or anyone for that matter) has accused loanDepot, and its loan officers specifically, of committing fraud. *See* ECF No. 35-3 at 18-19; Countercl. ¶¶ 19-27, *Movement Action*. So it is disingenuous for Plaintiffs to argue that the Maryland Action and the previous actions "involve representation of subsequent clients with similar claims against the same defendant." Opp. at 13. This current action raises ethical conflicts that were not present in the prior actions. loanDepot

therefore timely moved for disqualification when it was appropriate to do so: upon learning of—and only after diligently investigating—these conflicts.

Furthermore, Plaintiffs have not shown that loanDepot's motion in this case should be deemed untimely. Plaintiffs' reliance on *Buckley v. Airshield Corp.*, 908 F. Supp. 299, 307 (D. Md. 1995) backfires. Opp. at 12. *Buckley* acknowledged that "a party's failure to timely raise a motion to disqualify may result in a waiver," but the court ultimately found no delay (and no waiver) because the motion "was filed well before the commencement of trial and nothing in the record suggests [it was] filed . . . for purely tactical purposes." *Id.* at 308. Similarly, here, loanDepot filed its motion at the outset of this action and has a strong legal basis for doing so.

### B. loanDepot Filed This Motion to Protect the Integrity of the Court Proceedings and to Ensure that It Will Not Face Duplicative Claims

Plaintiffs contend that loanDepot "makes no effort to articulate how it is somehow harmed by" Mr. Karen's conflicts. Opp. at 8. This is both irrelevant and incorrect. Plaintiffs do not dispute that loanDepot's counsel, as officers of the court, have a duty to bring "facts justifying a disqualification of counsel" to the Court's attention. *United States v. Clarkson*, 567 F.2d 270, 271 n.1 (4th Cir. 1977).[14]

loanDepot has identified several reasons why Mr. Karen's representation will impair the "fair and efficient administration of justice." *Gross v. SES Americom, Inc.*, 307 F. Supp. 2d 719, 723 (D. Md. 2004) (quoting *Buckley*, 908 F. Supp. at 304). Mr. Karen has already used loanDepot's

---

[14] Plaintiffs assert that *Clarkson* is no longer good law. Opp. at 15-16. That assertion is incorrect. The Fourth Circuit has not overruled *Clarkson*, and the cases cited by Plaintiffs (*id.* at 15) are inapposite. *See United States v. Perry*, 30 F. Supp. 3d 514, 534 (E.D. Va. 2014) (discussing *Clarkson* as "'determining whether to disqualify counsel *for conflict of interest*,'" which is the case here, "not determining whether disqualification is necessary in a criminal case due to the potential that counsel will be called as a fact witness at trial," which was at issue in *Perry*) (citation omitted); *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, No. 18-cv-151, 2020 WL 4700975, at *2 (D.S.C. Aug. 13, 2020) (stating that court "need not resolve" whether *Clarkson* remains valid). In fact, other courts in the Fourth Circuit have continued to rely on *Clarkson*. *E.g.*, *SVB Fin. Grp. v. Fed. Ins. Co.*, No. 23-cv-95, 2024 WL 844840, at *2 (E.D.N.C. Feb. 28, 2024); *Livingston v. Copart of Conn., Inc.*, No. 17-cv-2543, 2020 WL 8167503, at *2 (D.S.C. Sept. 2, 2020).

confidential information to bring this lawsuit, harming loanDepot, Mot. at 16-17, and risking future improper disclosure and use of loanDepot's confidential information, which Mr. Karen undoubtedly obtained by virtue of his prior representation of former loanDepot loan officers.

Mr. Karen's conflicted representation also creates the risk that loanDepot will have to relitigate Plaintiffs' claims if future putative class members invoke his conflicts to challenge the adequacy of his representation and the binding effect of this Court's decisions. Mot. at 15-16. Courts have granted disqualification motions in class actions because such unremedied conflicts imperil finality. *See, e.g.*, *Smith v. Levine Leichtman Cap. Partners, Inc.*, No. 10-cv-10, 2011 WL 13153123, at *3 (N.D. Cal. Mar. 9, 2011) ("[Defendant] has a stake in reaching a just and binding adjudication on the merits of this action without exposure to a future challenge by absent class members based on breach of ethical duties by [p]laintiff's [conflicted] counsel.").

In response, Plaintiffs assert that they have not yet moved for class certification and "reserve their right to respond" to these risks if and when they file that motion. *See* Opp. at 28 n.20. But this Court need not—and should not—wait until class certification to take necessary steps to safeguard the integrity and fairness of these proceedings from Mr. Karen's conflicts of interest. Indeed, Plaintiffs' opposition puts class representation squarely at issue by repeatedly referencing their intention to seek "hundreds of millions of dollars" in damages. *Id.* at 1; *see id.* at 4. And as discussed, one of Plaintiffs' core arguments regarding Mr. Karen's conflict of interest is that his former clients need not worry because Mr. Karen only intends to pursue "class litigation" against loanDepot. *Id.* at 17. Accordingly, whether Mr. Karen's conflicts prevent him from being the attorney to lead this potentially sprawling class litigation is squarely on the table.

### C. loanDepot Is the Right Party to Raise These Issues

Unable to offer a convincing argument on the merits, Plaintiffs attack loanDepot's standing to seek disqualification. Plaintiffs are wrong. *See* Mot. at 6 n.7. "The Fourth and Fifth Circuits

have held that disqualification may rightly be sought by opposing counsel even though he/she is not representing the aggrieved client." *Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir. 1984). And as discussed above, loanDepot's counsel separately have a duty to bring "facts justifying a disqualification of counsel" to the Court's attention. *Clarkson*, 567 F.2d at 271 n.1.

Instead of addressing the authorities that establish loanDepot's standing, Plaintiffs lob unsubstantiated accusations at loanDepot and assign ill motives to its counsel. They claim that loanDepot is "argu[ing] as if its interests are aligned with those of its former adversaries" (Opp. at 9); "seek[ing] to disqualify counsel based upon counsel's prior litigation experience against the same litigant" (*id.* at 10 & n.5; *id.* at 12 n.8); "second-guess[ing]" Plaintiffs' choice of counsel (*id.* at 8-9); and restricting Mr. Karen's right to practice (*id.* at 11). None of this is true, and Plaintiffs offer no support for their assertion that loanDepot is acting in "bad faith." Opp. at 2.

At bottom, loanDepot filed this motion to bring to this Court's attention and to resolve Mr. Karen's serious conflicts of interest—which breach his ethical duties as an attorney, threaten the fair and efficient administration of these proceedings and the finality of any judgment, and compromise loanDepot's confidential information and other legal interests. Mot. at 14-17.

## **CONCLUSION**

The Court should grant loanDepot's motion to disqualify Mr. Karen and his firm.

Dated: January 15, 2026

Respectfully submitted,

**COOLEY LLP**

By: */s/ David E. Mills*
　　David E. Mills (Bar No. 16654)
　　Michelle L. Rogers (*pro hac vice*)
　　Raymond P. Tolentino (*pro hac vice*)
　　Elias S. Kim (*pro hac vice*)
　　1299 Pennsylvania Avenue NW
　　Suite 700
　　Washington, DC 20004-2400
　　Telephone: (202) 842-7800
　　Facsimile: (202) 842-7899
　　dmills@cooley.com
　　mrogers@cooley.com
　　rtolentino@cooley.com
　　ekim@cooley.com

　　Miranda Li (*pro hac vice*)
　　3 Embarcadero Center
　　20th Floor
　　San Francisco, CA 94111-4004
　　Telephone: (415) 693-2000
　　Facsimile: (415) 693-2222
　　mjli@cooley.com

　　*Attorneys for Defendant loanDepot.com, LLC*