IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATHAN JOHNSON, *et al.,*

    *Plaintiffs,*

    v.

LOANDEPOT.COM, LLC,

    *Defendant.*

Civil No.: 1:25-cv-02294-JRR

## MEMORANDUM OPINION

Pending before the court is Defendant's Motion to Disqualify Counsel (ECF No. 35; the "Motion") and Plaintiffs' Motion for Leave to File Surreply. (ECF No. 46.) The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025).

## I. BACKGROUND[1]

### A. Previous Litigation History

Beginning in February 2022, lead counsel for Plaintiffs in this action, Ari Karen, represented (now former client) Sean Johnson—previously employed as a loan officer and Area Manager by Defendant loanDepot.com, LLC ("loanDepot")—in an arbitration (the "Johnson Arbitration") initiated by Defendant against Mr. Johnson after he left the company to work for a competitor, Movement Mortgage, LLC ("Movement"). (ECF No. 35-1 at p. 6; Ex. A, ECF No. 35-3.)[2, 3] In the Johnson Arbitration, Defendant asserted several claims against Mr. Johnson, including a claim for breach of contract for "soliciting and/or inducing several

---

[1] For purposes of this Memorandum, the background consists of the facts and procedural history pertinent to the instant Motion, as provided by the parties in their respective papers. (ECF Nos. 35, 41, 45.) Unless otherwise noted, the following facts are undisputed.

[2] Filing references are to internal CM/ECF pagination.

[3] Defendant and Movement are "competitors in the business of making home mortgage, home equity, and personal loans." *loanDepot.com, LLC v. Movement Mortgage, LLC*, No. 23-cv-00681-MN (D. Del.) (the "Movement Action"), ECF No. 1 ¶ 3. The court may take judicial notice of matters in the public record and publicly available information on state and federal government websites. *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017).

loanDepot employees to leave [Defendant] to work for [Movement], and for transferring loanDepot confidential and proprietary information to his personal computer" in violation of his prior employment agreements. (ECF No. 35-1 at pp. 6–7.)  Thereafter, Mr. Johnson filed counterclaims in arbitration against Defendant, alleging that Defendant forced him to improperly apply certain source codes and that he was deprived of earned commissions "on loans Mr. Johnson originated but were instead credited to" internal loan consultants in violation of the loan officer compensation provisions of the Truth in Lending Act ("TILA").  (ECF No. 41 at pp. 10–11.)[4]  Plaintiffs here assert that Mr. Johnson provided two depositions and extensive testimony in the Johnson Arbitration proceedings regarding his knowledge and experience with Defendant's practices and why he believed its practices were improper.  *Id.*

While the Johnson Arbitration was ongoing, Defendant initiated action against Movement in the United States District Court for the District of Delaware (the "Movement Action") for Movement's alleged poaching of its former employees (including Mr. Johnson), asserting claims for, *inter alia*, misappropriation of Defendant's trade secrets and tortious interference with prospective contractual relations.  (ECF No. 35-1 at p. 8.)[5]  Specifically, "loanDepot asserted that Mr. Johnson and other former loanDepot employees who departed to Movement took loanDepot's confidential information, 'including the compilations of identities of customers that use loanDepot services, customer information provided by customers to loanDepot, the identities of prospective customers, the compilations of customer information . . . [and] lists of active loans in the pipeline[.]'"  *Id.* (quoting Movement Action complaint, *loanDepot.com, LLC v. Movement Mortgage, LLC*, Case No. 23-cv-00681-MN (D. Del.), ECF No. 1 at ¶ 94.)  +

---

[4] Mr. Karen represented at least one other former loanDepot loan officer in similar arbitration proceedings initiated by Defendant, and represented Movement in the Movement Action.  (ECF No. 41 at pp. 10-11; Enison Decl., ECF No. 35-2 ¶ 6.)  Mr. Karen's former loanDepot loan officer clients are referred to herein as the "Former Clients."
[5] *See loanDepot.com, LLC v. Movement Mortgage, LLC*, Case No. 23-cv-00681-MN (D. Del.), ECF No. 1.

On August 3, 2023, the Delaware court granted Mr. Karen's motion for pro hac vice status to serve as counsel for Movement. On behalf of Movement, Mr. Karen filed an answer and counterclaim against loanDepot for tortious interference with prospective business relations. (Case No. 23-cv-00681-MN (D. Del.), ECF No. 5.) Subsequently, a scheduling order was issued and the parties actively engaged in discovery. Plaintiffs here offer that Mr. Karen, as lead defense counsel in the Movement Action, "cited to the Former Clients' testimony-with their knowledge and consent-and advanced on Movement's behalf the same violation of the" loan officer compensation provisions alleged in the instant case. (ECF No. 41 at p. 11.) The Movement Action was dismissed with prejudice pursuant to a joint stipulation of dismissal filed July 26, 2024. (Case No. 23-cv-00681-MN (D. Del.), ECF No. 84.)

As for the Johnson Arbitration, by Interim Award of May 20, 2024 (Ex. A, ECF No. 35-3),[6] the arbitrator found in favor of loanDepot and against Mr. Johnson on loanDepot's claims for breach of contract and breach of fiduciary duty; as to its claim for conversion, however, the arbitrator concluded that loanDepot had "not proved that Johnson used [confidential and proprietary information] to eliminate loanDepot's competitive advantage or to solicit [their] customers." *Id.* at pp. 15–19. With respect to the breach of contract regarding confidential information, the arbitrator found that Mr. Johnson had "violated the portion of his agreement that required him to protect loanDepot's confidential and proprietary information, when he transferred tranches of loanDepot's confidential and proprietary information to his personal email address." *Id.* at p. 17.[7]

The arbitrator also found in favor of loanDepot and against Mr. Johnson on Mr. Johnson's counterclaims, finding that he had been paid in accordance with his written

[6] Plaintiffs do not dispute the authenticity or validity of the Interim Award attached as Exhibit A to Defendant's Motion. *See* ECF No. 35-3.

[7] The arbitrator found that the information transferred to Mr. Johnson's personal computer "was confidential and proprietary and would be valuable if given to a competitor." (ECF No. 35-3 at p. 17.) Moreover, the Interim Award noted that Defendant's confidential and proprietary information had remained in Mr. Johnson's possession for over two and half years. *Id.* at p. 28.

3

compensation agreements with loanDepot and that the evidence Mr. Johnson provided did not support his assertion that he was "forced" to apply certain source codes. *Id.* at pp. 22–24. The arbitrator awarded loanDepot $4,032,802 in compensatory damages, as well as injunctive relief. *Id.* at pp. 27–28. The Interim Award "permanently enjoined [Mr. Johnson] from retaining any of loanDepot's information and required [him] to remove it from any devices or accounts in his possession and to destroy any paper or other physical copies of the information." *Id.* at p. 28.

### B. The Instant Action

On July 15, 2025, represented by lead counsel Mr. Karen, Plaintiffs Nathan Johnson, Rachel DeBaun, Nathan Moore, and Shawn Derrick, on behalf of themselves and others similarly situated, initiated this class action against Defendant loanDepot, for violation of the loan officer compensation provisions of TILA, 15 U.S.C. § 1601, *et seq.* (ECF No. 1.) Plaintiffs subsequently filed a First Amended Class Action Complaint, the operative pleading, on October 3, 2025. (ECF No. 29; the "Amended Complaint.") The Amended Complaint asserts one count for violation of 15 U.S.C. § 1639b(c).

TILA provides in relevant part:

> (c) Prohibition on steering incentives
> > (1) In general
> > For any residential mortgage loan, no mortgage originator shall receive from any person and no person shall pay to a mortgage originator, directly or indirectly, compensation that varies based on the terms of the loan (other than the amount of the principal).

15 U.S.C. § 1639b(c)(1).

Plaintiffs allege Defendant "unlawfully steered Plaintiffs, and those similarly situated, to [mortgage] loans with higher rates and fees—a practice it accomplished by reducing the commissions paid to loan officers on discounted loans." (ECF No. 29 ¶ 2.) The factual allegations of Plaintiffs' Amended Complaint rely, in part, on testimony from former

loanDepot loan officers (Mr. Karen's Former Clients) in the Movement Action and declarations from three of the former loan officers. *See id.* at pp. 12–15. Plaintiffs here seek civil damages pursuant to 15 U.S.C. § 1640. (ECF No. 29 at p. 32.)[8, 9]

Defendant—by sworn declaration of Randi Enison, Senior Vice President and Associate General Counsel for Defendant—asserts that Mr. Johnson was the loan officer responsible for originating the mortgage loans of all four named Plaintiffs in this action. (ECF No. 35-1 at pp. 8–9; Enison Decl., ECF No. 35-2 ¶ 4.) Thus, Defendant asserts, Mr. Johnson had access to confidential information concerning Plaintiffs' loans, including, *inter alia*, borrower names, loan numbers, and compensation related to those loans. (ECF No. 35-1 at pp. 8–9; Enison Decl., ECF No. 35-2 ¶ 4; *see also* Johnson Arbitration Interim Award, Ex. A, ECF No. 35-3, *supra.*) Defendant asserts further that Mr. Karen naturally would have learned this information through his representation of Mr. Johnson. (ECF No. 35-1 at pp. 8–9; Enison Decl., ECF No. 35-2 ¶ 4.) Plaintiffs dispute these suggested connections and counter: (1) Plaintiffs "expressed interest in pursuing a case with [Mr. Karen's] representation"; (2) Mr. Karen "was able to ascertain from information in Plaintiffs' loan closing documents that they each had standing to pursue their claims"; and (3) Plaintiffs "were identified [by Mr. Karen] without any access to confidential information." (ECF No. 41 at p. 12.)[10]

### C. Communications Between Counsel

In light of the above, on September 10, 2025, approximately two months after Plaintiffs commenced the instant action, counsel for Defendant wrote to Mr. Karen "alerting him that his

---

[8] Pursuant to § 1640, with respect to an individual or class action for damages, "any creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person." 15 U.S.C. § 1640(a).

[9] On October 24, 2025, Defendant filed a Motion to Dismiss Plaintiffs' First Amended Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 32; the "Motion to Dismiss.") The Motion to Dismiss has been fully briefed by the parties and is currently pending.

[10] Plaintiffs do not address Defendant's assertion that Mr. Johnson was the loan officer responsible for originating Plaintiffs' mortgage loans. Plaintiffs do not dispute the authenticity or validity of the Enison Declaration submitted by Defendant, which expressly states Mr. Johnson originated Plaintiffs loans and had access to Defendant's confidential information. (Enison Decl., ECF No. 35-2 at ¶ 4.)

representation of the named Plaintiffs and the putative class created conflicts of interest with respect to his [F]ormer [C]lients and that he appeared to be using loanDepot's confidential information improperly." (ECF No. 35-1 at p. 10.) In that correspondence, Defendant's counsel raised concerns regarding the potential exposure of Mr. Karen's Former Clients to civil and/or criminal liability and noted Plaintiffs' allegations in this case "closely align" with allegations asserted by Mr. Karen on behalf of the Former Clients in the Johnson Arbitration and Movement Action. *Id.* Defendant requested additional information from Mr. Karen to address its concerns prior to seeking court intervention through a motion to disqualify. *Id.*

By letter of September 22, 2025, Mr. Karen responded to Defendant's inquiry. (Ex. B, ECF No. 41-2.) Mr. Karen represented that his firm, Mitchell Sandler PLLC, had consulted with Maryland ethics counsel, Alvin I. Frederick, as to the issues raised by Defendant. *Id.* at p. 2.[11] The letter stated, "[a]fter reviewing the facts and circumstances, Mr. Frederick has concluded that to a reasonable degree of legal certainty there is no violation of Maryland Rule 19-301.9 or any basis for disqualification from this matter." *Id.* Moreover, Mr. Karen questioned the timing of Defendant's objection given its lack of objection to his representation of the Former Clients or Movement in prior litigation. *Id.* at p. 3. With regard to Defendant's confidential information, Mr. Karen stated, "[w]hile the Former Clients may have anecdotal evidence about loanDepot's practices, it could hardly be deemed to be confidential, particularly given they openly testified to it on repeated occasions." *Id.* Finally, Mr. Karen rejected the notion of a conflict under Rule 1.9 of the Maryland Attorneys' Rules of Professional Conduct ("MARPC"),[12] asserting the referenced matters are not substantially related and his

---

[11] Regarding Mr. Frederick's qualifications, the letter of September 22, 2025, provides: "Mr. Frederick is a Fellow of the American College of Trial Lawyers and the former chair of the Lawyers and Judges Subcommittee of the Standing Committee on Rules and Procedure of the Supreme Court of Maryland on which he served for 10 years. Mr. Frederick concentrates his practice in the area of ethics and risk management." (Ex. B, ECF No. 41-2 at p. 2 n.1.)

[12] The parties refer to the relevant MARPC as 19-301.7, 19-301.9, and 19-301.10, as codified in Title 19, Chapter 300 of the Maryland Rules. For ease of reference, and in keeping with opinions of this court and the Maryland state courts, the court refers to the MARPC using the numbering format of the American Bar Association ("ABA") Model Rules, as permitted by Maryland Rule 19-300.1(22).

representation of Plaintiffs in this matter is not materially adverse to his Former Client's interests. *Id.* at pp. 3–4.

Defendant asserts that Mr. Karen's letter only heightened its concerns regarding what it viewed as his conflict of interest; Defendant highlighted those concerns in another letter to Mr. Karen on October 7, 2025. (ECF No. 35-1 at p. 11.) In that letter, Defendant noted Mr. Karen's response did not dispute that Mr. Johnon's compensation counterclaim in the Johnson Arbitration substantially overlaps with Plaintiffs' claims in this action, and that he failed to address conflicts of interest between Plaintiffs here and the Former Clients. *Id.* Defendant also requested a copy of Mr. Frederick's written opinion on which Mr. Karen relied. *Id.*

In a final communication with defense counsel on October 17, 2025, Mr. Karen reiterated that Defendant has no reasonable basis to seek his or his firm's disqualification as Plaintiffs' counsel, and that there is no risk of liability to Mr. Karen's Former Clients "for following policies [Defendant] continues to represent are lawful." (Ex. A, ECF No. 41-1 at p. 2.) Mr. Karen also asserted that it would be unreasonable to expect him and his firm "to risk waiving applicable privileges and breaching confidences by providing [their] own counsel's [(Mr. Frederick's)] opinion and prior clients' potential waivers." *Id.* The letter concluded by informing Defendant that Mr. Karen had taken "each and every possible precaution to ensure we remain compliant with" MARPC 1.9 and put opposing counsel on notice that Plaintiffs would seek sanctions for "improper conduct" if Defendant continued to "pursue disqualification premised on baseless assumptions and unfounded legal theories that ignore actual facts." *Id.* at p. 3.

The parties' correspondence having failed to address Defendant's concerns to its satisfaction, Defendant filed the instant Motion on November 20, 2025, to disqualify Mr. Karen and his law firm, Mitchell Sandler PLLC, from representing the named Plaintiffs and putative class members in this action due to the alleged "presence of significant ethical conflicts." (ECF

No. 35-1 at p. 5.)  The Motion has been fully briefed by the parties.  (ECF Nos. 41, 45.)  As said earlier, Plaintiffs also filed a Motion for Leave to File Surreply, which the court addresses below.

## II.    PLAINTIFFS' PROPOSED SURREPLY

On January 29, 2026, Plaintiffs filed a Motion for Leave to File Surreply pursuant to Local Rule 105.2(a).  (ECF No. 46.)  In the motion, Plaintiffs request the court grant them leave to file the attached surreply because, they assert, Defendant's reply in support of its Motion raises new matters, namely: (1) "[t]he standards for duties owed to former clients" under the MARPC; and (2) "[f]irst-time mischaracterizations of the record."  *Id*. ¶ 2.  In opposition, Defendant argues its Reply does not advance new arguments, as it "was merely responding to arguments Plaintiffs made in their opposition" and the "alleged mischaracterizations are merely disagreements about how to interpret ambiguities in Plaintiffs' own arguments."  (ECF No. 47 at pp. 1–2.)

Surreplies are generally not permitted, however, whether to permit a surreply is within the court's discretion.  *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part sub nom.*, 778 F.3d 463 (4th Cir. 2015); Local Rule 105.2(a) (D. Md. 2025) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed.").  "This discretion is typically used in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs."  *Boland v. Amazon.com Sales*, *Inc.*, 628 F. Supp. 3d 595, 599 (D. Md. 2022) (citing *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004)).  *See Freeman*, 961 F. Supp. 2d at 801 (explaining that "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply.") (citing *Khoury*, 268 F. Supp. 2d at 605 (D. Md. 2003)).  Of import here, "[w]here 'the arguments made by Defendants in their reply brief are merely responses to new arguments made by Plaintiffs in

8

their response,' a sur-reply is not appropriate." *Freeman*, 961 F. Supp. 2d at 801 (quoting *Aguilar v. LR Coin Laudromat,* 2012 WL 1569552, at \*2–\*3 (D. Md. May 2, 2012)).

In view of these principles, the court is not persuaded a surreply is warranted here. Defendant's Reply arguments are squarely responsive to Plaintiffs' opposition and are not properly classified as new matters. The arguments raised in the proposed surreply concerning the standard of duty owed to former clients under the MARPC and references to the record in this case can be adequately addressed by the court on the existing papers without need for surreply. Further, Plaintiffs' surreply reiterates several points raised in their opposition and does not materially affect the court's analysis. Accordingly, the court will deny Plaintiffs' Motion for Leave to File Surreply.

## III.    LEGAL STANDARD

"When confronted with a potential conflict of interest, the district court is obligated to independently determine whether the continued representation by counsel impedes the integrity of the proceedings and whether the attorney should thus be disqualified." *United States v. Williams*, 439 F. App'x 254, 256 (4th Cir. 2011) (citing *Wheat v. United States,* 486 U.S. 153, 159–160 (1988)). Pursuant to Local Rule 704, "[t]his Court shall apply the Rules of Professional Conduct as they have been adopted by the Supreme Court of Maryland." Local Rule 704 (D. Md. 2025). As previously explained by this court:

> A motion to disqualify is a serious matter, which must be decided on a case-by-case basis. This is so because two significant interests are implicated by a disqualification motion: the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community. Nevertheless, the guiding principle in considering a motion to disqualify counsel is safeguarding the integrity of the court proceedings. Thus, this court must not weigh the competing issues with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing an appearance of impropriety, [this Court] is to resolve all doubts in favor of disqualification.

9

*Jarallah v. Thompson*, 123 F. Supp. 3d 719, 731 (D. Md. 2015), *aff'd*, 627 F. App'x 185 (4th Cir. 2015) (quoting *Penn Mutual Life Ins. Co. v. Berck,* No. DKC 09–0578, 2010 WL 3294309, at *3 (D. Md. Aug. 20, 2010)).

The moving party "bear[s] 'a high standard of proof to show that disqualification is warranted' because it is such a drastic measure." *Franklin v. Clark*, 454 F. Supp. 2d 356, 364 (D. Md. 2006) (quoting *Buckley v. Airshield Corp.,* 908 F. Supp. 299, 304 (D. Md. 1995)). Disqualification "is permitted 'only where the conflict is such as clearly to call in question the fair and efficient administration of justice.'" *Victors v. Kronmiller*, 553 F. Supp. 2d 533, 551 (D. Md. 2008) (quoting *Gross v. SES Americom, Inc.,* 307 F. Supp. 2d 719, 722–23 (D. Md. 2004) (Titus, J.)); *see also Aetna Cas. & Surety Co. v. United States,* 570 F.2d 1197, 1200– 1201 (4th Cir.1978) (requiring district court to find "an actual conflict exists," not just a speculative conflict, before disqualifying counsel). "Put another way, disqualification simply cannot be based on mere speculation that 'a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur.'" *Sanford v. Commonwealth of Virginia*, 687 F. Supp. 2d 591, 603 (E.D. Va. 2009) (quoting *Shaffer v. Farm Fresh, Inc.,* 966 F.2d 142, 145 (4th Cir.1992)). "Accordingly, the movant has the burden of proof as to all facts necessary to show the rule of professional conduct that requires the attorney's disqualification." *Jarallah*, 123 F. Supp. 3d at 732.

IV.    **ANALYSIS**

As explained above, Defendant seeks to disqualify Plaintiffs' counsel, Ari Karen, and his law firm, Mitchell Sandler PLLC, from representing the named Plaintiffs and putative class members in this action due to the alleged "presence of significant ethical conflicts." (ECF No. 35-1 at p. 5.)  Specifically, Defendant argues that Mr. Karen's representation of Plaintiffs presents conflicts of interest in violation of MARPC 1.7, 1.9, and 1.10. *Id.* at p. 13.  At bottom, Defendant claims that in order to achieve success for Plaintiffs in this action, "Mr. Karen must

subject his former clients to significant liability" and "prevailing in this case would only be possible due to Mr. Karen's use of his former client's and loanDepot's confidential information." *Id.* at p. 5. Plaintiffs argue Defendant's Motion is improper and untimely, and there is no ethical conflict supporting Mr. Karen's disqualification. (ECF No. 41 at pp. 14–35.)

### A. Timeliness and Waiver

As an initial matter, the court first addresses the issue of timeliness before turning to the merits of the Motion. Plaintiffs argue that Defendant waived its right to contest Mr. Karen's representation of Plaintiffs in this action because Defendant failed to object to Mr. Karen's prior representation of Defendant's former employees or Movement in the Johnson Arbitration, Movement Action, or related litigation, which began over four years ago. (ECF No. 41 at p. 11.) Defendant counters that it did not waive its right to seek Mr. Karen's disqualification in this case because Defendant did not have grounds to move to disqualify Mr. Karen in the other actions, as no conflict existed at the time, and Defendant's Motion was otherwise filed in a timely manner. (ECF No. 45 at pp. 16–17.)

"In determining whether a party has brought a motion to disqualify with improper motives, the timing of the motion becomes an important factor. Courts have held that a party's failure to timely raise a motion to disqualify may result in a waiver." *Buckley v. Airshield Corp.*, 908 F. Supp. 299, 307 (D. Md. 1995). While "delay is an important factor to consider in determining whether to grant a motion to disqualify, delay alone, without consideration of the movant's reasons for delay, is not a sufficient reason to deny a motion." *Fenzel v. Group2 Software, LLC*, No. CIV.A. DKC 13-0379, 2014 WL 7404575, at *4 (D. Md. Dec. 29, 2014). Although "there are no specific rules governing challenges based on timeliness," a court should not "avoid its duty and responsibility of supervising the conduct of the attorneys who appear before it solely because a party delayed in raising the disqualification issue." *Buckley*, 908 F.

11

Supp. at 308 (quoting *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990)) (internal quotations omitted).

"Timely service of a motion to disqualify helps to curb the potential use of the motion as a litigation tactic or to harass the opposing party." *Gross v. SES Americom, Inc.*, 307 F. Supp. 2d 719, 723 (D. Md. 2004). The relevant factors courts should consider when determining whether a movant has waived its right to contest the representation of an opposing party include: "(1) when the movant learned of the conflict; (2) whether the movant was represented by counsel during the delay; (3) why the delay occurred, and, in particular, whether the motion was delayed for tactical reasons; and (4) whether disqualification would result in prejudice to the nonmoving party." *Fenzel*, 2014 WL 7404575, at *4 (quoting *Buckley*, 908 F. Supp. at 307).

Here, the court does not find Defendant's Motion is untimely such that Defendant waived its right to contest Mr. Karen's representation of Plaintiffs. Plaintiffs point to a 2010 opinion from the Circuit Court for Baltimore County as instructive in this case. (ECF No. 41 at p. 19; *see Baltimore Cnty. v. Barnhart,* No. 03-C-09-000660, 2010 WL 6823921 (Md. Cir. Ct. Apr. 21, 2010).) In that declaratory judgment action, Baltimore County sought disqualification of Barnhart, a former Baltimore County attorney who transitioned to private practice, from representing a former county employee in an ongoing administrative appeal against the County for allegedly violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.11 and 1.9. *Id.*[13] The administrative appeal concerned the calculation of the former county employee's retirement allowance. *Id.* Barnhart had previously represented another former county employee with an identical claim. *Id.* During her representation of the second former county employee, only six days prior to a Board of Appeals hearing on the

---

[13] "Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct ('MARPC') and renumbered." *Att'y Grievance Comm'n of Maryland v. McLaughlin*, 456 Md. 172, 181 n.1 (2017). MLRPC 1.9 concerned duties to former clients and MLRPC 1.11 concerned conflicts of interests of former and current government officers and employees.

merits of the administrative appeal, Baltimore County initiated the action against Barnhart for violation of the MLRPC. *Id.*

In *Barnhart*, the alleged conflict arose from the fact that Barnhart was also a former employee of Baltimore County, and the County raised concerns that she may have received confidential government information while working for the County that could have been used in the subsequent representation of its former employees. Thus, the former client to whom an ethical duty was allegedly owed in both matters was Baltimore County, Barnhart's former employer. The Circuit Court ultimately held that the County had waived its right to seek disqualification of Barnhart because it would have learned of any alleged conflict during the two years Barnhart represented the first former County employee, and the County never sought disqualification in that case. Moreover, the court found the delay in seeking disqualification in the second matter was clearly for tactical reasons, as the County had lost the administrative appeal in the first matter and sought disqualification in the second matter to prevent Barnhart from continuing to represent its former employees and others similarly situated.

*Barnhart* is materially distinguishable from the facts here and therefore inapposite. As an initial matter, there were no affected "former clients" in the previous actions because the Former Clients at issue here were Mr. Karen's current clients at the time. As Defendant notes, no conflict existed at the time of the previous litigation because "Mr. Karen was not then representing a party who was asserting a claim that could subject [his Former Clients] to liability." (ECF No. 45 at p. 15.) The Johnson Arbitration, related arbitrations, and Movement Action were all initiated by Defendant, and the counterclaims asserted by Mr. Karen's Former Clients in those actions for breach of compensation contracts and tortious interference with business relations did not expose the Former Clients to potential liability. As previously held by this court, § 1640(a) of TILA has been interpreted to "mean that TILA confers a statutory right of action only on a borrower in a suit against the borrower's creditor." *Costley v. Bank*

*of Am., N.A.*, No. 13-CV-02488-ELH, 2017 WL 5564641, at *4 (D. Md. Nov. 20, 2017) (quoting *Mortensen v. Home Loan Ctr., Inc.*, No. CV-08-1669-PHX-DGC, 2009 WL 113483, at *2 (D. Ariz. Jan. 16, 2009)) (internal quotations omitted).  Accordingly, only in this action do Mr. Karen's current clients (Plaintiffs), as borrowers of loans originated by Defendant and Mr. Johnson, have the right to bring a TILA action for damages.

Importantly, § 1639b(d) of TILA's anti-steering provision makes § 1640(a) applicable to mortgage originators.  The relevant provision provides:

> For purposes of providing a cause of action for any failure by a mortgage originator, other than a creditor, to comply with any requirement imposed under this section and any regulation prescribed under this section, section 1640 of this title shall be applied with respect to any such failure by substituting "mortgage originator" for "creditor" each place such term appears in each such subsection.

15 U.S.C. § 1639b(d)(1).  "Mortgage originator" is defined as "any person who, for direct or indirect compensation or gain, or in the expectation of direct or indirect compensation or gain -- (i) takes a residential mortgage loan application; (ii) assists a consumer in obtaining or applying to obtain a residential mortgage loan; or (iii) offers or negotiates terms of a residential mortgage loan."  15 U.S.C. § 1602(dd)(2)(A).  Section 1611 also imposes potential criminal penalties of up to a $5,000 fine and/or imprisonment of up to one year for willful and knowing violations of TILA.  15 U.S.C. § 1611.[14]  Thus, pursuant to the aforementioned TILA provisions, at least one of Mr. Karen's Former Clients, Mr. Johnson—as the undisputed originating loan officer for the named Plaintiffs' loans in this action—may be subject to civil

---

[14] Whoever willfully and knowingly
> (1) gives false or inaccurate information or fails to provide information which he is required to disclose under the provisions of this subchapter or any regulation issued thereunder,
> (2) uses any chart or table authorized by the Bureau under section 1606 of this title in such a manner as to consistently understate the annual percentage rate determined under section 1606(a)(1)(A) of this title, or
> (3) otherwise fails to comply with any requirement imposed under this subchapter,

shall be fined not more than $5,000 or imprisoned not more than one year, or both.

liability and/or criminal penalty as a mortgage originator for violations of the anti-steering provision.

Defendant could only have learned of the potential ethical conflicts after Plaintiffs filed this action. The court also finds no concerning delay in bringing the Motion. Defendant filed its Motion only four months after Plaintiffs filed this action; no trial has been scheduled, nor has discovery taken place. *See Buckley*, 908 F. Supp. at 308 (holding that a party had not waived its right to seek disqualification of counsel when raising an objection within two months of filing suit and where no trial had been set and no discovery had taken place). Notably, both parties agree that defense counsel began communicating Defendant's conflict concerns to Mr. Karen only two months after this case was filed. Defendant gave Mr. Karen multiple opportunities to address its concerns prior to filing the disqualification Motion, in response to which Mr. Karen denied any conflict and asserted that any such motion would be met with a motion for Rule 11 sanctions. *See* Exs. A-B, ECF Nos. 41-1 and 41-2.

Nothing in the record before the court suggests Defendant delayed in filing the Motion at all, no less for strategic, tactical reasons. Finally, the court finds that potential disqualification of Mr. Karen would not unduly or materially prejudice Plaintiffs, as Plaintiffs are represented by two co-counsel from a different firm, Smith, Gildea & Schmidt, LLC. (ECF No. 23.) Therefore, the *Fenzel* factors do not weigh in favor of finding Defendant waived its right to contest the representation of Plaintiffs (and the putative class) by Mr. Karen and his law firm. *See* 2014 WL 7404575, at *4, *supra*.[15] Accordingly, the court proceeds to address the merits of Defendant's Motion.

---

[15] To the extent Plaintiffs question Defendant's standing to seek disqualification, the court finds that Defendant has standing to bring the Motion. As noted by the Fourth Circuit in *United States v. Clarkson*, "it has been held that any member of the bar aware of the facts justifying a disqualification of counsel is obligated to call it to the attention of the court." 567 F.2d 270, 271 n.1 (4th Cir. 1977); *see also Kevlik v. Goldstein*, 724 F.2d 844 (1st Cir. 1984) (finding that "[t]he Fourth and Fifth Circuits have held that disqualification may rightly be sought by opposing counsel even though he/she is not representing the aggrieved client."). Additionally, there is no indication whatsoever that defense counsel raised this issue in bad faith.

### B. MARPC 1.7 – General Rule

In its Motion, Defendant argues that Mr. Karen's representation of Plaintiffs runs afoul of MARPC 1.7, and disqualification is warranted, because "Mr. Karen's responsibilities to his former clients—Mr. Johnson and other former loanDepot employees—materially limit his obligations to Plaintiffs and the putative class." (ECF No. 35-1 at p. 13.)  Plaintiffs assert there is no basis for disqualification pursuant to MARPC 1.7 because: (1) Mr. Karen's Former Clients will not face civil or criminal liability; and (2) Plaintiffs' accusations and interests are aligned with the Former Clients—thus, Mr. Karen's obligation to Plaintiffs will not be materially limited.  (ECF No. 41 at pp. 23–28.)

MARPC 1.7 provides in relevant part:

> (a) Except as provided in section (b) of this Rule, an attorney shall not represent a client if the representation involves a conflict of interest. A conflict of interest exists if . . .
>
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the attorney's responsibilities to another client, a former client or a third person or by a personal interest of the attorney.

MARPC 1.7(a)(2) (MD. RULE 19-301.7).  As to material limitations, the comments to MARPC 1.7 provide:

> Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk that an attorney's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the attorney's other responsibilities or interests.  For example, an attorney asked to represent several individuals seeking to form a joint venture is likely to be materially limited in the attorney's ability to recommend or advocate all possible positions that each might take because of the attorney's duty of loyalty to the others. The conflict in effect forecloses alternatives that would otherwise be available to the client.  The mere possibility of subsequent harm does not itself require disclosure and consent. The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the attorney's independent professional judgment

> in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

*Id.* at cmt. 8. "In determining the existence of a conflict, the question is not whether a party's claim is likely to succeed but rather whether an attorney's ability to 'recommend or advocate all possible positions' that a client may take would be 'materially limited' because of the lawyer's 'duty of loyalty' to another client." *Johnson v. Clark Gin Serv., Inc.*, No. 15-3290, 2016 WL 7017267, at *11 (E.D. La. Dec. 1, 2016) (quoting Louisiana Rule of Professional Conduct 1.7).[16]

Here, Defendant argues that Mr. Karen's disqualification is warranted under MARPC 1.7(a)(2) because his representation of Plaintiffs and putative class members will be materially limited by his responsibility to his Former Clients to protect them from civil or criminal liability. Plaintiffs do not challenge that the Former Clients may be subject to civil liability and criminal penalties according to the statute. Instead, Plaintiffs question whether there is any real risk of such harm, because, they say, the applicable statute of limitations forecloses civil liability against the Former Clients, and because of the high standard of proof in criminal actions. (ECF No. 41 at pp. 23–26.) This tepid response is unpersuasive.

As discussed, the court finds that Mr. Karen's Former Clients, specifically Mr. Johnson, may indeed be subject to civil and/or criminal liability by virtue of this action. Indeed, Plaintiffs assert they chose not to pursue claims against individual loan officers like Mr. Johnson because, *inter alia*, Defendant has the financial capacity to pay any potential judgment pursuant to §1640, whereas an individual loan officer's resources would be limited, and because of the "host of challenges" involved in potentially suing thousands of individual loan officers on a class wide basis. (ECF No. 41 at p. 24 nn.10-11.) This, of course, says nothing of the potential for civil/criminal liability at the hands of class members who may sue Mr.

---

[16] Louisiana Rule of Professional Conduct 1.7 is analogous to MARPC 1.7.

17

Johnson (and other Former Clients) separately, class members who opt out of this action, or in the event class certification is denied; nor does this response address the mechanism of criminal action by way of criminal information or indictment, as well as criminal charges arising from a complaint made by a private citizen to a law enforcement or judicial officer in jurisdictions where that may be available.[17]

Further, the reasons Plaintiffs cite for declining to pursue litigation against individual loan officers (including the Former Clients) may reasonably be characterized as legal strategy—typically the province, and undertaken upon advice, of counsel. The court makes no findings as to how or why Plaintiffs chose a certain course of legal action—and, critically, opted to forgo others; but that is of no moment. As lead counsel, Mr. Karen's ability to advise Plaintiffs on such matters would be materially limited if any Former Client was a loan officer who originated any one of Plaintiffs' loans—and we know this to be in fact the case as to Mr. Johnson, as he was the loan officer on all of Plaintiffs' loanDepot loans.

Here, again, the prospect of unknown putative class members exacerbates this limitation (*i.e.*, conflict) to an equally unknown magnitude. That unnamed (unknown) putative class members may want to pursue claims against individual loan officers who are Former Clients is an obvious potential near term development should Plaintiffs win class certification. Equally obvious is the impossibly sticky thicket of class counsel with two masters—obligated to advise class members of their right to pursue such claims (and whether in fact they should), and the rather contrary duty not to imperil Former Clients in a manner directly related to his former service as their attorney. In other words, Mr. Karen's previous representation of the Former Clients will impair his ability to serve Plaintiffs ethically and fully (and class members should a class be certified); conversely, Mr. Karen's obligations to advise and best serve

---

[17] 15 U.S.C. § 1640(e) permits actions for TILA violations to be brought in federal and state courts.

Plaintiffs (and class members) necessarily imperils the Former Clients in the form of civil liability and criminal penalties, which includes potential prison time.

As to Plaintiffs' contention that the statute of limitations forecloses civil liability against the Former Clients, as Defendant correctly notes, Plaintiffs' opposition to Defendant's pending Motion to Dismiss argues that the (same) statute of limitations is equitably tolled based on Defendant's purported fraudulent concealment. (ECF No. 38 at p. 30.) Plaintiffs cannot have it both ways. In recognition of these contradictory positions, Plaintiffs do not take aim at the potentiality of the Former Clients' civil liability as a function of express TILA language; rather, Plaintiffs offer that proving fraudulent concealment poses too tall and factually complex a mountain to climb as to specific loan officers—and so "Plaintiffs seek no such finding." (ECF No. 41 at p. 24.) This mistakes the point. Because true or not, Mr. Karen would still be foreclosed from representing any Plaintiffs (or class members) who may want to pursue claims against a Former Client; and it ignores the problem of whether Mr. Karen's representation of the Former Clients limits his capacity to serve and advise Plaintiffs (and putative class members). Plaintiffs offer the statute of limitations to rebuff Defendant's argument on the conflict, but against the backdrop of their equitable tolling argument, Plaintiffs simply demonstrate the problem more clearly.

The court finds that Mr. Karen's representation of Plaintiffs creates a conflict of interest under MARPC 1.7(a)(2) because there is a significant risk—indeed, a likelihood—that Mr. Karen's representation of Plaintiffs and the putative class will be materially limited by his responsibilities to the Former Clients.[18] In the view of the court, this poses a material impediment to the integrity of these judicial proceedings and the fair and efficient administration of justice.

---

[18] The court addresses the issue of waiver and informed consent pursuant to MARPC 1.7(b) in Section E, *infra*.

### C.  MARPC 1.9 – Duties to Former Clients

Next, Defendant argues Mr. Karen's representation of Plaintiffs violates MARPC 1.9 "because this matter is substantially related to the Johnson Arbitration and Plaintiffs' interests in this case are materially adverse to the interests of Mr. Johnson and Mr. Karen's other former clients." (ECF No. 35-1 at p. 16.)  Plaintiffs counter: (1) the matters are not substantially related because Former Client confidences will not be used against them; (2) Mr. Karen's representation of Plaintiffs is not materially adverse to his Former Clients; and (3) even if MARPC 1.9 were to apply, Plaintiffs have taken every precaution to ensure compliance with the rule.  (ECF No. 41 at pp. 28–33.)

MARPC 1.9 provides in relevant part:

> An attorney who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

MARPC 1.9(a).  The parties do not dispute that Mr. Karen had an attorney-client relationship with the Former Clients.  Accordingly, to disqualify Mr. Karen from representing Plaintiffs and putative class members pursuant to MARPC 1.9, the court evaluates the following:

(1)  Whether this matter is substantially related to the Johnson Arbitration and/or the Movement Action; and

(2)  Whether Plaintiffs interests in this case are materially adverse to the interests of Mr. Karen's Former Clients.[19]

#### 1.  *Whether the Matters are Substantially Related*

First, the court must assess whether the instant action is substantially related to the Johnson Arbitration and/or the Movement Action in which Mr. Karen represented the interests of former employees of Defendant (the Former Client).  As previously explained by this court:

> In determining whether a former and current matter are "'substantially related,' it is not necessary that the two

---

[19] The court addresses the issue of waiver and informed consent pursuant to MARPC 1.9(a) in Section E, *infra*.

> representations involved the same operative facts so long as there is a sufficient similarity of issue." *Stratagene v. Invitrogen Corp.,* 225 F.Supp.2d 608, 611 (D. Md. 2002) (inner quotation marks and citations omitted). The court's primary concern is "whether there is a reasonable probability that confidences were disclosed in the prior representation which could be used against the former client in the current litigation...." *Id.* For this reason, the court must analyze "the nature and scope of the prior and present representations and determine whether confidences might have been disclosed in the course of the prior representation which could be relevant to the present action." *Id.*

*Victors*, 553 F. Supp. 2d at 552.

Comment 3 to MARPC 1.9 provides helpful guidance:

> Matters are "substantially related" . . . if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. . . . Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying. . . . In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation. A former client is not required to reveal the confidential information learned by the attorney in order to establish a substantial risk that the attorney has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the attorney provided the former client and information that would in ordinary practice be learned by an attorney providing such services.

MARPC 1.9 (MD. RULE 19-301.9 cmt. 3).

Defendant asserts the Johnson Arbitration, Movement Action, and the current action are "substantially related" because there is a substantial risk confidential information obtained by Mr. Karen in the Johnson Arbitration and the Movement Action would (will) advance Plaintiffs' position in this case; the risk has already come to fruition because Mr. Karen was privy to Defendant's confidential information in his representation of its former employees (the

21

Former Clients); and that information "was plainly used to bring this lawsuit." (ECF No. 35-1 at p. 17.)

Although Defendant bears a heavy burden on the Motion *en toto*, Defendant need not demonstrate actual receipt of confidences by Mr. Karen from his Former Clients. The court may infer such disclosures based on the nature of services provided by Mr. Karen in the prior representation. *Hudak v. I.R.S.*, Case No. MJG-11-1271, 2012 WL 6726705, at *3 (D. Md. Dec. 26, 2012); *Stratagene v. Invitrogen Corp.*, 225 F. Supp. 2d 608, 612 (D. Md. 2002) (finding that requiring demonstration of receipt of confidences by former counsel would "place an unreasonable burden on the moving party"); comment to MARPC 1.9, *supra* ("A conclusion about the possession of such [confidential] information may be based on the nature of the services the attorney provided the former client and information that would in ordinary practice be learned by an attorney providing such services"). Importantly, "[i]t is well settled that once an attorney-client relationship has been established, an irrebuttable presumption arises that confidential information was conveyed to the attorney in the prior matter." *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 731 (E.D. Va. 1990) (citations omitted); *Nichols Agency, Inc. v. Enchanted Child Care, Inc.*, 537 F. Supp. 2d 774, 779 (D. Md. 2008) (acknowledging irrebuttable presumption arises that confidential information was conveyed to attorney in prior matter).

Plaintiffs claim: "there is simply no basis for suggesting that confidential information provided by the Former Clients to Lead Counsel is being used against them." (ECF No. 41 at p. 30.) As support for this claim, Plaintiffs offer that this case involves corporate policies and publicly available testimony given by the Former Clients against Defendant, information they assert "cannot be the basis for disqualification." *Id.* While the comment to MARPC 1.9 supports the position that publicly available information cannot support a claim of a 1.9 conflict, it goes on to explain, relevant here, that "knowledge of specific facts gained in a prior

representation that are relevant to the matter in question ordinarily will preclude such a representation." MARPC 1.9, cmt. 3.

As noted previously, Plaintiffs do not dispute that Mr. Johnson was in possession of Defendant's proprietary and confidential information during the Johnson Arbitration (or that the arbitrator found in favor of Defendant on a claim that Mr. Johnson wrongly misappropriated it for use at his new employer). Because it was an issue central to the arbitration, the court can infer that Mr. Karen, as Mr. Johnson's counsel, obtained this confidential information, which Defendant asserts (without opposition) included the names, loan numbers, and compensation related to the loans that Mr. Johnson originated for the named Plaintiffs in this action.[20] (Enison Decl., ECF No. 35-2 ¶ 4.) Moreover, to evaluate the existence of a conflict, the court is not required to conclude that confidential information conveyed to Mr. Karen was used to bring this action, only that such information would materially advance Plaintiffs' position. There is no question the confidential information related to the named Plaintiffs' loans would materially advance Plaintiffs' position—or that it could be used against the Former Clients' interests.[21]

Accordingly, this action and the prior litigation involving the Former Clients are substantially related for purposes of MARPC 1.9.

### 2. Whether Plaintiffs' Interests are Materially Adverse to the Former Clients

Next, the court assesses whether Plaintiffs' interests in this case are materially adverse to the interests of Mr. Karen's Former Clients. Comment 2 to MARPC 1.9 provides in relevant part:

---

[20] Similarly, as Mr. Karen represented at least one other former loanDepot loan officer in similar arbitration proceedings brought by loanDepot, the court can reasonably conclude Mr. Karen was privy to the same type of confidential information in those proceedings, which would equally advance Plaintiffs' cause here. (*See also* ECF No. 41 at pp. 11 where Plaintiffs explain that Mr. Karen used Former Clients' arbitration testimony to defend Movement in the Movement Action, which pertained to theft of confidential loan documents and the like.)

[21] For purposes of ruling on the Motion, the court need not determine whether the Movement Action (where Mr. Karen served as lead defense counsel and used Former Clients' testimony to Movement's benefit) is substantially related to the instant action; however, it is beyond cavil—indeed conceded—that Mr. Karen's attorney-client relationship with the Former Clients, through which he had access to confidential information about loanDepot loan practices and loan documents, was harnessed to defend Movement. And as said earlier, there is no question that same confidential information advances Plaintiffs' position in this action.

> The scope of a "matter" for purposes of this Rule depends on the facts of a particular situation or transaction. The attorney's involvement in a matter can also be a question of degree. When an attorney has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited. . . . The underlying question is whether the attorney was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

MARPC 1.9 (MD. RULE 19-301.9 cmt. 2).

Defendant argues that the relevant parties' interests are materially adverse and "fundamentally incompatible" because "Mr. Johnson and the other former loanDepot loan officers, as perpetrators of the purported scheme [alleged by Plaintiffs], would have been key (and potentially, the lead) actors in facilitating any alleged fraud." (ECF No. 35-1 at p. 17.) In response, Plaintiffs cite a Formal Opinion of the ABA Standing Committee on Ethics and Professional Responsibility; in it, the ABA offers the following examples where material adverseness may be found: (1) suing or negotiating against a former client; (2) attacking a lawyer's own prior work; and (3) examining a former client. ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 497, 4-7 (Feb. 10, 2021).

Plaintiffs assert no such circumstance is present here because "Plaintiffs are merely carrying the torch lit by the Former Clients[]" and, because the Former Clients' previous testimony in other litigation confirms "information that supports Plaintiffs' claims, there is certainly no material adversity." (ECF No. 41 at p. 31.) Plaintiffs contend that Defendant's Motion is based on a mere "speculative assertion," and correctly note that "specific tangible direct harm" is a hallmark of material adversity. *Id.* at p. 32. Specifically, like their argument as to MARPC 1.7, Plaintiffs contend the potential harm to the Former Clients is mere speculation because "significant legal hurdles above and beyond Defendant's liability would need to be established and Plaintiffs have no reason or intention of pursuing such objections." *Id.*

Again, Plaintiffs' arguments are unavailing. As the court explained above, at least one of Mr. Karen's Former Clients, Mr. Johnson, is squarely susceptible to civil liability and/or criminal penalty based on Plaintiffs' TILA claim.[22] As the loan officer who originated the mortgage loans for all four named Plaintiffs in this action, the potential harm to Mr. Johnson is not speculative. Indeed, should Plaintiffs prevail (which Mr. Karen advocates as the correct and just outcome), Mr. Johnson is in the crosshairs.[23] The interests of Mr. Karen's Former Clients and current clients became materially adverse the moment Plaintiffs instituted this action.

With respect to examination of a former client, the ABA opinion cited by Plaintiff provides:

> If a lawyer must use information relating to the former representation to the disadvantage of a former client to competently examine the former client, the lawyer has a conflict, unless that information has become "generally known." However, even if a lawyer ethically can use the information or does not need to use information, the lawyer still may have a conflict of interest in examining a former client under Rule 1.9(a) if the former client's interests are "materially adverse" to the current client *and* the current matter is substantially related to the prior matter. Courts have sometimes found "material adverseness" when the lawyer proposes to examine a former client, where no information from the prior representation will be used.

---

[22] Inasmuch as discovery has not gotten underway and a class has not been certified, the court does not know at this time if any other Former Client of Mr. Karen would face potential civil and/or criminal penalties as a result of Plaintiffs' TILA claim here. But it does not portend well, as it is hardly conjecture to note that Mr. Karen's known actual conflicts will likely expand beyond Mr. Johnson to include other Former Clients who originated loans of class members Mr. Karen seeks to represent on a national level. The proposed class is defined as follows:

> All individuals in the United States who, between January 1, 2019, to the present, obtained a residential mortgage loan (as defined in 15 USC § 1602(dd)(5) of TILA) from loanDepot through its retail division, excluding from the class those persons whose loans were transferred to Internal Loan Consultants (the "Class"). Exempted from this class is any person who, during the period of January 1, 2019, to the present, was an employee, officer, member and/or agent of loanDepot, and any judicial officer who handles this case, and the immediate family members of such judicial officer(s).

(ECF No. 29 at ¶ 75.)

[23] Indeed, Mr. Johnson (and possibly other Former Clients) is at risk of civil and/or criminal action regardless of Plaintiffs' success here, but surely that risk would be heightened should Plaintiffs prevail.

ABA Formal Op. 497 at 7. Plaintiffs contend "there would be no reason to suggest that Lead Counsel would ever need to cross examine his Former Clients given their extensive prior testimony[.]" (ECF No. 41 at p. 31 n.15.) This is wrongheaded.

To begin, Plaintiffs fail to address the constraints of Federal Rule of Evidence 804(b)(1). Plaintiffs may not rely on Mr. Johnson's (or any other Former Client's) testimony at trial unless that witness is unavailable per Rule 804(a). FED. R. EVID. 804. Further, the ABA opinion relates to "examination" of a former client; it is not limited to "cross-examination" for a reason. To begin, testimony given by the Former Clients in the Johnson Arbitration, other former loanDepot loan officer arbitrations, and the Movement Action involved different claims and different parties and would not necessarily encompass the essential elements testimony needed here. But regardless, suggestion that Mr. Johnson will not be called to testify, whether by Plaintiffs or Defendant—as the known originating loan officer for all named Plaintiffs and who Plaintiffs claim steered them contrary to TILA—borders the absurd.

Plaintiffs do not address the obvious scenario where Mr. Johnson is deposed by Defendant[24] or called as a witness at trial, which would place Mr. Karen in the untenable position of having to examine his Former Client, Mr. Johnson, to establish that he—as Plaintiffs' loan officer—steered Plaintiffs "towards mortgage loans that contained higher rates and less favorable terms," as expressly alleged at paragraph 76(b) of the Amended Complaint. For its part, Defendant asserts that Mr. Johnson and other former loanDepot officers are very likely to be witnesses in this action subject to deposition, called to testify at trial, or impleaded as third-party defendants. (ECF No. 35-1 at p. 18.) All of that seems patently obvious and is not mere speculation.[25]

---

[24] Whether to assess his risk to Defendant at trial, to cabin his testimony, or for any number of other strategy reasons.

[25] Here again, Mr. Karen's representation of the Former Clients casts a pall on his capacity to serve Plaintiffs in violation of MARPC 1.7. Plaintiffs seek to establish Defendant's liability in a nationwide class action on grounds that "Plaintiffs and Class members were steered towards mortgage loans that contained higher rates and less favorable terms by loanDepot loan officers." (ECF No. 29 at ¶ 76(b).) As noted above, the notion that the

The court finds that the Johnson Arbitration (and the other arbitration proceedings in which Mr. Karen served as counsel for at least one other former loanDepot loan officer) and the current action are substantially related, and that Mr. Karen had access to, and likely obtained, confidential information through his representations of the Former Clients in the arbitration proceedings, including the Johnson Arbitration, and that such information would advance Plaintiffs' position here.  The court also find the interests of Plaintiffs are materially adverse to, and materially conflict with, those of the Former Clients.

For the foregoing reasons, the court finds Mr. Karen's representation of Plaintiffs (and the putative class) is a conflict of interest under MARPC 1.9(a).  In the view of the court, this poses a material impediment to the integrity of these judicial proceedings and the fair and efficient administration of justice.

### D. MARPC 1.10 – Imputation of Conflict of Interest—General Rule

Defendant argues that Mr. Karen's conflicts of interest are imputed to his law firm, Mitchell Sandler PLLC, pursuant to MARPC 1.10.  (ECF No. 35-1 at p. 13.)

MARPC 1.10 provides in relevant part:

> (a) While attorneys are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 19-301.7 (1.7) or 19-301.9 (1.9), unless the prohibition is based on a personal interest of the prohibited attorney and does not present a significant risk of materially limiting the representation of the client by the remaining attorneys in the firm.

MARPC 1.10 (MD. RULE 19-301.10).

The comments further explain:

> The rule of imputed disqualification stated in section (a) gives effect to the principle of loyalty to the client as it applies to attorneys who practice in a law firm. Such situations can be considered from the premise that a firm of attorneys is essentially

---

testimony of former loanDepot loan officers, including the Former Clients, won't figure into this case (whether called by Plaintiffs or Defendant to testify) because Former Clients testified in the arbitrations and Delaware court Movement Action is just not plausible.

one attorney for purposes of the rules governing loyalty to the client, or from the premise that each attorney is vicariously bound by the obligation of loyalty owed by each attorney with whom the attorney is associated. Section (a) of this Rule operates only among the attorneys currently associated in a firm.

*Id.* at cmt. 2.

Because the court finds Mr. Karen has a conflict of interest in representing Plaintiffs in this action, MARPC 1.10 necessarily imputes Mr. Karen's conflict to all attorneys at Mitchell Sandler PLLC.  The conflict is not imputed to Plaintiffs' local counsel from Smith, Gildea & Schmidt, LLC.

### E. Waivers and Informed Consent

This brings the court to the question of waiver.  "Waiver of the conflict is possible, but only with the informed consent of 'each affected client.'"  *CytImmune Scis., Inc. v. Paciotti*, No. PWG-16-1010, 2017 WL 57213, at *6 (D. Md. Jan. 5, 2017) (citing MARPC 1.7(b) and 1.10(d)).[26]  In the presence of the above-described material conflicts of interest as to Mr. Karen and his firm's representation of Plaintiffs and the putative class, the court must assess whether these conflicts have been waived.

MARPC 1.7(b) provides that an (otherwise conflicted) attorney may represent a client if:

> (1) the attorney reasonably believes that the attorney will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the attorney in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

---

[26] MARPC 1.10(d) provides: "A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 19-301.7 (1.7)."

MARPC 1.7(b) (MD. RULE 19-301.7).

As set forth above, MARPC 1.9(a) similarly requires a former client to give "informed consent, confirmed in writing" if a conflict of interest exists.  Comment 14 to MARPC 1.7 provides:

> Ordinarily, clients may consent to representation notwithstanding a conflict. However, as indicated in section (b) of this Rule, some conflicts are nonconsentable, meaning that the attorney involved cannot properly ask for such agreement or provide representation on the basis of the client's consent. When the attorney is representing more than one client, the question of consentability must be resolved as to each client.

MARPC 1.7(b), cmt. 14.

Informed consent is defined as "the agreement by a person to a proposed course of conduct after the attorney has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." MARPC 1.0(g) (MD. RULE 19-301.0 (g)).  On the topic, comment 18 to MARPC 1.7 provides:

> Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client. See Rule 19-301.0 (g) (1.0) (informed consent). The information required depends on the nature of the conflict and the nature of the risks involved. When representation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved.

MARPC 1.7, cmt. 18.

Here, Defendant argues that even if Mr. Karen has obtained waivers from Plaintiffs and the Former Clients, such waivers would unlikely properly address his conflict of interest.  (ECF No. 35-1 at p. 15.)  In response, Plaintiffs argue if a conflict under MARPC 1.9 were to exist (which they robustly deny), Plaintiffs have "taken every precaution to ensure compliance with

[the rule] under any possible ethics review." (ECF No. 41 at p. 32.)[27]  Mr. Karen asserts that on the advice of ethics counsel—presumably Mr. Frederick—he "was unwilling to voluntarily disclose the existence of a waiver absent this [c]ourt's order." *Id.*  Nevertheless, Mr. Karen offers that he will "provide the [c]ourt *ex parte* any information, including the existence of any waivers, if applicable, to confirm" compliance with the MARPC. *Id.*[28]  In its reply, Defendant asserts "a future promise of undefined *ex parte* materials is plainly insufficient for this [c]ourt to conclude that no conflict exists." (ECF No. 45 at p. 13.)  Moreover, Defendant urges, the potential conflicts are too serious to be waivable. (ECF No. 35-1 at pp. 18–19.)

The court is unable to evaluate or assess waiver given the present record before the court.  Plaintiffs at once contend there is no conflict of interest (under any rule) and yet obliquely suggest the possible existence of waivers, which of course must disclose with specificity the nature of the conflict(s) the waivers purport to cover.  While these two positions appear conceptually at odds, the court makes no determination of waiver at this time, because it simply has not been furnished with the requisite tools to do so, which is to say the court cannot evaluate in the abstract the competence of a waiver to provide informed consent.

In sum, for all of the reasons set forth above, the court finds that absent competent waivers, Mr. Karen and his firm are operating under material conflicts of interest in the representation of Plaintiffs and putative class members in this case.  But, in order to determine whether the Motion should be granted—*i.e.*, whether to disqualify Mr. Karen and his firm— the court must evaluate waiver in full.  Therefore, the court will provide Mr. Karen an opportunity to provide the court with such waivers, to the extent they exist.

---

[27] Plaintiffs do not address the issue of waiver with respect to MARPC 1.7 or 1.10.

[28] The court notes that Plaintiffs may be unwilling to voluntarily disclose the existence of a waiver pursuant to MARPC 1.6(b)(4), which provides: "An attorney may reveal information relating to the representation of a client to the extent the attorney reasonably believes necessary to secure legal advice about the attorney's compliance with these Rules, a court order or other law."

## V.    CONCLUSION

For the reasons set forth herein, by separate order, Plaintiffs' Motion for Leave to File Surreply (ECF No. 46) shall be denied and Defendant's Motion (ECF No. 35) shall be held *sub curia* as follows: Mr. Karen shall have until 12:00PM, June 8, 2026, to provide waivers for the court's evaluation.  If Mr. Karen wishes to submit such waivers under seal for *ex parte* review, he shall accompany his filing with a motion compliant with Local Rule 105.11.  In the event no waivers are timely submitted for the court's review, the court will enter an order granting the Motion and disqualifying Mr. Karen and Mitchell Sandler PLLC from representing Plaintiffs in this matter.  In the event Mr. Karen provides waivers for the court to evaluate, the court will undertake a fulsome assessment and will issue a final ruling on the Motion accordingly.

June 1, 2026

/S/

_____
Julie R. Rubin
United States District Judge

31