**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| NATHAN JOHNSON, RACHEL DeBAUN, NATHAN MOORE, and SHAWN DERRICK, on behalf of themselves as well as a Class of all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>LOANDEPOT.COM, LLC,<br><br>Defendant. | Civil Action No. 1:25-CV-02294-JRR |

# INITIAL JOINT STATUS REPORT

Plaintiffs and Defendant (jointly, the "Parties") jointly submit this Initial Joint Status Report pursuant to this Court's September 22, 2026 Scheduling Order (ECF No. 62) (the "Scheduling Order").

## I. SCOPE OF DISCOVERY

Plaintiffs' Position: Discovery will be focused on Defendant's scheme, as alleged in the Complaint, to steer customers toward mortgage loans with higher interest rates and fees in violation of federal statutes and regulations (the "Challenged Practices" or "Scheme") and class certification. To that end, Plaintiffs anticipate seeking discovery regarding: (1) Defendant's policies, practices and procedures regarding mortgage placement; (2) Defendant's compensation policies and practices for loan officers; (3) Defendant's policies and practices regarding pricing exceptions and transfers of customer accounts to Internal Loan Consultants; (4) Plaintiffs' loans obtained from Defendant; (5) Defendant's implementation of the Challenged Practices vis-à-vis Plaintiffs and the proposed class ("Class"); (6) Defendant's asserted reliance on regulatory

guidance; (7) Defendant's internal auditing and compliance process and history; (8) Defendant's concealment of its compensation practices and policies from borrowers; and (9) the damages suffered by Plaintiffs and the Class as a result of Defendant's Scheme.

Defendant's Position: Defendant loanDepot respectfully submits that discovery in this putative nationwide class action must guard against an unduly burdensome fishing expedition while permitting a rigorous examination of Plaintiffs' allegations. loanDepot believes the Court's Discovery Order provides a workable baseline, and loanDepot's proposed modifications are intended to allow development of an adequate record while keeping discovery proportional and efficient. The Parties have negotiated in good faith to reach agreement in most instances; where they disagree, loanDepot believes its proposals best reflect the needed balance for discovery.

Plaintiffs seek to represent a nationwide class of borrowers over a multi-year period. Discovery must address potentially dispositive, individualized issues as to each named Plaintiff, including standing, the statute of limitations, purported fraudulent concealment, and diligence. loanDepot further intends to develop a record establishing each putative class member's individualized treatment, rebutting Plaintiffs' assertion of a uniform, company-wide compensation scheme. loanDepot maintains that each loan—named Plaintiffs' and putative class members' alike—was individually originated, with available terms varying based on borrower-specific and market factors. In these circumstances, adjudicating Plaintiffs' claims would require a case-by-case, loan-by-loan inquiry inappropriate for class treatment. That said, a sufficiently broad and proportionately tailored factual record does not require open-ended discovery given that Plaintiffs allege only a single narrow claim under the Truth in Lending Act. Likewise, the breadth of Plaintiffs' putative class as pleaded—spanning a nationwide group of consumers, and stretching back to 2019, well before the ordinary statute of limitations—should not justify departing

wholesale from the reasonable limits on discovery embodied in the Court's Discovery Order, such as the presumptive limits on ESI search and production. Finally, loanDepot anticipates the need for appropriate third-party discovery, including testimony from former loanDepot loan officers who the Court has recognized may be critical in this case. *See* ECF 48 at 26.

## II. **MODIFICATION OF SCHEDULING DEADLINES**

The Parties seek to modify the deadlines set in the Court's Scheduling Order, as set forth below. The Parties believe that the proposed schedule adjustments will allow them sufficient time to conduct necessary discovery without unreasonably delaying the progress of the litigation.

The Parties request that the Scheduling Order be modified as set forth below:

<u>The Parties' Proposed Schedule:</u>

| **Case Event** | **Proposed Date** |
|---|---|
| Rule 26(a)(1) Initial Disclosures | November 24, 2026 |
| Substantial Completion of Document Production | April 30, 2027 |
| Deadline to Amend Pleadings / Join Additional Parties | May 14, 2027 |
| Deadline to File Motion for Class Certification, Including Any Accompanying Class Certification Expert Report | June 11, 2027 |
| Deadline to File Opposition to Class Certification, Including Any Accompanying Class Certification Expert Report | 60 days after the filing of Plaintiffs' Motion for Class Certification |
| Deadline for Reply in Support of Class Certification | 30 days after the filing of Defendant's Opposition to Class Certification |
| Hearing on Class Certification | TBD, at the Court's Convenience |
| Plaintiffs' Rule 26(a)(2) disclosures | No later than 30 days following class certification decision |
| Defendant's Rule 26(a)(2) disclosures | No later than 60 days following class certification decision |
| Close of Fact Discovery*; Submission of Status Report | 60 days following class certification decision |
| Deadline to Propound Requests for Admission | 67 days following class certification decision |
| Plaintiffs' rebuttal Rule 26(a)(2) disclosures | No later than 90 days following class certification decision |

| | |
|---|---|
| Rule 26(a)(2) supplementation of disclosures and responses | No later than 97 days following class certification decision |
| Deadline to File Dispositive Motions** | 120 days following class certification decision |

*The parties agree that any discovery requests propounded after the class certification decision will be reasonably limited to unanticipated issues not contemplated prior to class certification being sought.

** This deadline is without prejudice to a party filing an early motion for summary judgment.

## III. <u>RULE 16 CONFERENCE CALL</u>

The Parties do not believe a Conference Call is necessary but will make themselves available at the Court's convenience if it would be of assistance to the Court.

## IV. <u>SETTLEMENT/ADR CONFERENCE</u>

The Parties do not request an early settlement/ADR conference at this time. The Parties are amenable to private mediation after a more fulsome record has been developed.

## V. <u>DEPOSITION HOURS</u>

Each Party agrees on the need to modify Paragraph 8 of the Court's Discovery Order; the Parties disagree on the extent of the modification.

<u>Plaintiffs' Position:</u> Plaintiffs propose that, in light of the complexity of the case being pursued on behalf of Plaintiffs and thousands of similarly situated individuals, the Parties be limited to no more than 95 total deposition hours per side, excluding 30(b)(6) witnesses and expert witnesses. No deposition – including Rule 30(b)(6) and expert witness depositions – shall exceed 7 hours. The Parties agree that either side may seek additional depositions by agreement between the Parties or by order the Court upon showing of good cause.

Plaintiffs' deposition hour proposal is based on Plaintiffs' counsel's prior class action experience in this Court, namely in the matter of *Edmondson v. Eagle Nat'l Bank, et al.*, No. 1:16-cv-03938-RDB/SAG, where the Parties agreed to 95 hours of depositions. *See Edmondson* August

22, 2019 Joint Rule 26(f) Status Report, ECF No. 42, attached as Exhibit 1. *Edmondson* alleged violations of RESPA's anti-kickback provisions in schemes that were localized to a handful of the defendants' branch offices. The wrongful activity alleged in this matter is much greater in scope than what was alleged in *Edmondson*, pervaded through all loanDepot offices, and affected a class of borrowers potentially numbering in the hundreds of thousands. In addition to six loanDepot executives/managers identified in the Complaint, Plaintiffs intend to identify and depose, among other witnesses, (i) several Internal Loan Consultants (employees to whom loans were transferred when a rate reduction, or Pricing Exception, was approved); (ii) several loan officers and loan processors regarding their understanding of loanDepot's compensation policies/practices, the relationship between pricing and loan transfers, and the change (or lack thereof) in loan handling/processing after a loan transfer; (iii) individuals with knowledge of Defendant's loan transfer forms and the circumstances under which they were utilized; (iv) individuals with knowledge relevant to Defendant's affirmative defenses, including Bona Fide Error and Reliance on Regulatory Guidance; and (v) individuals with knowledge of Defendant's loan pricing, including par rates, initial quotes, and contemporaneous rate sheets. Assuming five (5) hours per deposition, Plaintiffs' proposed hour limit equates to 19 depositions, which Plaintiffs believe is reasonable under the circumstances and not disproportional to what is at issue in this matter.

<u>Defendant's Position:</u> Defendant proposes that, for depositions of fact witnesses, Plaintiffs and Defendant each be limited to no more than 40 total deposition hours, excluding 30(b)(6) witnesses and expert witnesses. No deposition—including Rule 30(b)(6) and expert witness depositions—shall exceed seven (7) hours. The Parties agree that either side may seek additional depositions by agreement between the Parties or by order of the Court upon a showing of good cause.

Defendant's position hews more closely than Plaintiffs' proposal to the Court's default Discovery Order—which permits only four (4) deposition hours for each fact witness, seven (7) deposition hours for each 30(b)(6) and expert witness, and no more than 15 total deposition hours for fact witnesses (including parties). *See* ECF No. 62 at 3; ECF No. 63 at 3. Defendant proposes a reasonable increase in total deposition hours in light of the number of named Plaintiffs, the need for third-party discovery, and Plaintiffs' allegations. Defendant's proposed 40-hour fact witness deposition total is derived by multiplying this Court's expected average length for a fact witness deposition (4 hours) by the default number of depositions under the Fed. R. Civ. P. 30(a)(2)(A)(i) (10 depositions). To the extent that discovery reveals the need for additional depositions, Defendant's proposal explicitly permits the Parties to seek additional depositions by agreement or leave of Court. Defendant respectfully submits that its deposition proposal faithfully adheres to this Court's admonition that "discovery in civil cases be proportional to what is at issue in the case" by permitting a calibrated expansion of discovery while prioritizing efficiency and proportionality.

Plaintiffs' reliance on *Edmondson* does not warrant a different result. The 95-hour limit in *Edmondson* was a negotiated agreement between the parties (including multiple defendants), not a limit imposed by the Court, and that case involved a materially different RESPA theory based on alleged kickback arrangements between a third-party title company and individual mortgage brokers and loan officers, including alleged cash and in-kind payments, referral arrangements, sham entities, and back-dated agreements. *See Edmondson v. Eagle Nat'l Bank*, 922 F.3d 535, 541-43 (4th Cir. 2019). Here, by contrast, Plaintiffs assert a single TILA theory based on a purportedly uniform, company-wide compensation practice. The case-specific agreement reached in *Edmondson* therefore does not establish that 95 fact-witness deposition hours are proportional

to the issues here.

Finally, many of the topics—including compensation policies, loan-transfer procedures, pricing practices, and affirmative defenses—that Plaintiffs cite to justify their extensive deposition asks seek information on companywide policies and practices. Such issues are best addressed not through 95 hours of Rule 30(b)(1) deponent testimony, but through Rule 30(b)(6) testimony. Notably, Plaintiffs exclude any Rule 30(b)(6) deposition from their proposed 95-hour limit.

## VI. OTHER MODIFICATIONS TO DISCOVERY PROVISIONS

The Parties seek to modify Paragraph 6 of the Court's Discovery Order as follows:

**Re: Discovery Order 6(a).**

Joint Modification: The Parties shall work in good faith to produce responsive documents within 30 days after the responding party agrees to produce them, and in all events in a reasonable time that permits the parties to comply with the deadlines for completion of necessary discovery in this case.

Plaintiffs' Further Position: Plaintiffs propose that in light of the complexity of the case, the Parties be permitted to serve 50 Requests for Production of documents, 45 Interrogatories, and 45 Requests for Admission (other than requests propounded for the purpose of establishing the authenticity of documents or the fact that documents constitute business records). The Parties agree to work in good faith to negotiate and adjust such limits where appropriate.

Plaintiffs refer back to the complexity of this matter and the numerous areas of discovery and potential deponents identified in §§ I and V, above, as a basis for seeking additional document requests, interrogatories, and requests for admissions. The Parties agreed to a similar expansion (40 for each) in *Edmondson*, which as noted was smaller in scope and complexity than the present matter.

Defendant's Further Position: Defendant proposes that the Parties be permitted to serve the default number of Interrogatories permitted under the Federal Rule of Civil Procedure 33(a)(1)—25 Interrogatories—and the ability to seek additional interrogatories either upon agreement of the Parties or a showing of good cause. At this stage of the litigation, no good cause exists to nearly double the default number of Interrogatories. Plaintiffs present a single legal theory, rather than multiple claims necessitating voluminous interrogatories, and the allegations core to this case are limited to a purported uniform policy or practice.

Likewise, Defendant proposes that the Parties be permitted to serve the default number of Requests for Production and Requests for Admissions under Local Rule 104—30 of each form of request—again with the ability to seek additional requests either upon agreement of the Parties or a showing of good cause. Plaintiffs' requested expansion of those limits at this stage in the case is not justified.

Again, Plaintiffs' reliance on *Edmondson* does not support the still greater limits they seek here. Indeed, Plaintiffs acknowledge that they go beyond the discovery authorized in *Edmondson*: the parties in *Edmondson* agreed to 40 of each form of written discovery, whereas Plaintiffs seek 50 Requests for Production and 45 Interrogatories and Requests for Admission here. In any event, Plaintiffs have not shown why the applicable default limits, together with the ability to seek additional discovery by agreement or upon a showing of good cause, are inadequate to interrogate the single theory Plaintiffs assert here.

**Re: Discovery Order 6(b)(i)(b)**.

Plaintiffs' Position: Plaintiffs propose that discovery of ESI created from January 1, 2018 (one year prior to the start of the class period) forward be permitted.

Plaintiffs allege an ongoing practice on the part of Defendant of violating TILA's loan

officer compensation rule that affected the loans of the named Plaintiffs and the class of similarly situated borrowers, and which steered them into higher cost loans. Plaintiff Johnson's loan closed in September of 2019 and the alleged Class Period begins on January 1, 2019. The remaining Plaintiffs' loans all closed *before* the ESI discovery starting period proposed by the Defendant. Discovery of ESI dating back to one year before the start of the class period is necessary to establish the existence of loanDepot's systemic and improper compensation policies as of the beginning of the class period through and including the dates of all Plaintiffs' loans. Further, by way of example and not exclusion, discovery of ESI dating back to January 1, 2018—including the identification of transferred loans and the pricing and compensation associated with each—will yield a greater and more statistically significant data set as to the association between Pricing Exceptions, loan transfers, and loan officer compensation.

Defendant's Position: Defendant proposes that, absent an order of the Court upon a showing of good cause or stipulation by the parties, a party from whom ESI has been requested shall not be required to search for responsive ESI that was created more than four (4) years from before filing of this lawsuit—that is, a starting period of July 15, 2021. Defendant further proposes that the Parties agree to work in good faith to negotiate and adjust the relevant time period (including an earlier start date for custodial documents) on an individualized basis where appropriate for particular discovery requests.

Defendant's position provides a more reasonable default period given the claims and issues in this case, while allowing for tailored expansion for specific discovery requests where needed. Claims under the Truth in Lending Act carry a three-year statute of limitations, 15 U.S.C. § 1640(e), running "from the date of the occurrence of the violation," that is, the "date the loan agreement is entered into," *Davis v. Edgemere Fin. Co.*, 523 F. Supp. 1121, 1123 (D. Md. 1981).

A three-year period before the original complaint filed in this case (ECF No. 1) would run to July 15, 2022. loanDepot's proposed starting date of July 15, 2021 as the default for ESI discovery reasonably expands that period by an additional year, to provide both Parties additional needed discovery. Nothing in Plaintiffs' allegations provides a basis for a generalized expansion of ESI discovery stretching back almost 9 years before the filing of this Initial Joint Status Report. Moreover, loanDepot's proposal of 4 years is closer to the default ESI period under the Discovery Order—5 years prior to filing of the original complaint—than Plaintiffs' proposal of over 7.5 years prior to the filing of the original complaint.

Finally, as indicated, loanDepot is willing to work in good faith to negotiate request-specific data ranges with Plaintiffs should either party propound a discovery request that requires pre-July 15, 2021 discovery. But the fact that certain named Plaintiffs' loans predate loanDepot's proposed default period does not justify a blanket January 1, 2018 start date for all ESI. Discovery as to these loans can and should be negotiated as to individualized requests and discrete productions. No good reason exists to extend discovery writ large to January 2018 merely because certain named Plaintiffs sought loans in 2019—and believe the statute of limitations does not apply to them. Indeed, Plaintiffs allege a purportedly consistent practice by loanDepot as core to their claim, without any allegation that the practice differed before or after 2021. There is thus no articulable need for most aspects of discovery—including those identified by Plaintiffs above in their Scope of Discovery Statement—to stretch years before the statute of limitations. Plaintiffs' further justification for discovery stretching to 2018—a desire for a "greater . . . data set"—merely underscores the immense burden Plaintiffs may seek to impose through the backdoor of a lengthy ESI period: a structured data production of sensitive financial information pertaining to nationwide loans covering nearly a decade.

## VII. MAGISTRATE JUDGE

The parties do not unanimously consent to proceed before a United States Magistrate Judge.

Dated: October 6, 2026

Respectfully submitted,

/s/
Michael Paul Smith, #23685
Eric R. Harlan, #23492
Smith, Gildea & Schmidt, LLC
600 Washington Avenue
Suite 200
Towson, MD 21204
Telephone: (410) 821-0070
Fax: (410) 821-0071
mpsmith@sgs-law.com
eharlan@sgs-law.com
*Counsel for Plaintiffs*

/s/
James C. Shah (*pro hac vice*)
MILLER SHAH LLP
1845 Walnut Street
Suite 1600
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
*Co-Counsel for Plaintiffs*

/s/
James E. Miller (*pro hac vice*)
MILLER SHAH LLP
65 N. Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
*Co-Counsel for Plaintiffs*

COOLEY LLP

BY: */S/ DAVID E. MILLS*
David E. Mills (Bar No. 16654)
Michelle L. Rogers (*pro hac vice*)
Raymond P. Tolentino (*pro hac vice*)
Alexander J. Kasner (*pro hac vice*)
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004-2400
Telephone: +1 202 842 7800
Facsimile: +1 202 842 7899
dmills@cooley.com
mrogers@cooley.com
rtolentino@cooley.com
akasner@cooley.com

*Attorneys for Defendant loanDepot.com, LLC*

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 6th day of October, 2026, I served copies of the foregoing via this Court's CM/ECF system to counsel of record for the parties.

_/s/_

Eric R. Harlan, #23492